**DIVERSIFIED CARE MANAGEMENT, LLC, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 12, 2005.

Decided Oct. 21, 2005.

Joseph P. Nigro, Pittsburgh, for petitioner.

Paul R. Jordan, Asst. Counsel, Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

Diversified Care Management, LLC (Employer) petitions for review of the order of the Unemployment Compensation Board of Review (Board) which affirmed the referee's grant of benefits and determined that Patricia L. Williams (Claimant) was not ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1]

The relevant facts as found by the Board are as follows:

1. The claimant has been employed with Diversified Care Management, LLC since August 6, 2002 assigned to the client, Allegheny County Department of Human Services. On May 27, 2003, the claimant was promoted to the position of title 4E specialist Supervisor at a pay rate of $32,000.00 annually. The claimant held this position until her last day of work on July 15, 2004.

2. After the claimant was promoted to her supervisory position she began to experience various problems with the County official who supervised her work.

. . . .

6. On or around May 7, 2004, a meeting was held with the claimant, representative of Diversified Care Management, LLC, and the site supervisor.

7. During the meeting, it was suggested that the claimant return to her prior position of Title 4R specialist, retaining her supervisory salary, benefits, and tuition assistance or develop a work plan citing the responsibilities of a title 4E specialist Supervisor.

8. On May 12, 2004, the claimant submitted a work plan for title 4E Specialist Supervisor.

9. Over the next two months no specific performance issues arose.

10. On July 13, 2004, the claimant's son, while driving the claimant's car was involved in an incident with the local police. As a result, the claimant's car was impounded.

11. On July 14, 2004, the claimant requested and was granted by the Supervisor to leave work prior to the end of her shift to secure her car from the police pound.

12. While at work the claimant used the County's telephone, having several discussions about this personal matter throughout the day.

13. A co-worker nearby could hear the claimant discussing her son's legal problems over the telephone, including the allegations involving guns and drugs;

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b).

the claimant also spoke with this co-worker about her predicament.

14. The site supervisor heard about the conversation and thought that the claimant may have been implicated, and so informed the employer.

15. When the employer learned of these allegations it immediately suspended the claimant with pay while it conducted its own investigation.

16. The employer learned that the allegations against the claimant were false and based upon an apparent misunderstanding.

17. The employer, however, was disturbed that the claimant was having such conversations on [sic] using the County's telephones.

18. Although there was no specific policy regarding the use of the County's telephones, the employer felt that this showed a lack of good judgment.

19. The employer decided to demote the claimant to her prior position due to this incident; the employer indicated that although the claimant's responsibilities would be reduced, there would be no reduction in her salary or benefits.

. . . .

22. The employment relationship ended on July 26, 2004, with the claimant indicating that she would not accept the demotion, and the employer stating that the claimant's termination was effective July 23, 2004.

23. The claimant quit her position because she felt the demotion was not justified.

Board Decision, March 18, 2005, (Decision), Finding of Facts Nos. 1–2, 6–19, 22–23 at 1–3.

The Board determined that Claimant established that she had cause of a necessitous and compelling nature for voluntarily quitting her employment:

> The only relevant consideration in cases where a claimant quits due to a demotion, is whether the employer's act in demoting the claimant was justified. Here, the Board concludes that the employer was not justified in taking such action. The employer has no specific policy regarding the use of County telephones by its employees. The claimant understandably needed to deal with pressing legal and financial matters and used the County's telephone for such matters. Without the guidance of a specific written or verbal policy, the Board does not agree that the claimant committed misconduct or even exercised poor judgment. Therefore, the employer action in demoting the claimant for this incident was not justified, and the claimant did have necessitous and compelling cause for quitting her position under Section 402(b) of the Law.

Decision at 3.

■ Employer contends that the Board erred when it failed to subject the issue of Claimant's demotion to a substantial change analysis, that Claimant failed to establish that her job duties substantially changed as a result of the demotion, and that the Board erred when it relied on the lack of a policy by Employer as a basis to allow benefits.[2]

■ Initially, Employer contends that the Board properly considered whether Claimant's demotion was justified but erred when it made this determination

2. This Court's review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or essential findings of fact are not supported by substantial evidence. *Lee Hospital v. Unemployment Compensation Board of Review*, 161 Pa.Cmwlth. 464, 637 A.2d 695 (1994).

when it failed to determine whether Claimant's job duties substantially changed.

■ An employee voluntarily terminating employment has the burden of proving that such termination was necessitous and compelling. The question of whether a claimant has a necessitous and compelling[3] reason to terminate employment is a question of law reviewable by this Court. *Willet v. Unemployment Compensation Board of Review*, 59 Pa. Cmwlth. 500, 429 A.2d 1282 (1981). Where an employee resigns, leaves, or quits without action by the employer, the action amounts to a voluntary termination. *Sweigart v. Unemployment Compensation Board of Review*, 47 Pa.Cmwlth. 421, 408 A.2d 561 (1979).

In *Allegheny Valley School v. Unemployment Compensation Board of Review*, 548 Pa. 355, 697 A.2d 243 (1997), our Pennsylvania Supreme Court set forth the appropriate standard for determining whether a claimant has a necessitous and compelling reason for quitting his job after receiving a demotion. Darrell Callwood (Callwood) worked for Allegheny Valley School (Allegheny) as an assistant house manager for the second shift. Early in his employment, Callwood's supervisors repeatedly met with him to discuss deficiencies in his job performance. Approximately eighteen months after he commenced employment, Allegheny offered him a demotion to either house manager aide or developmental care specialist due to his inability to perform his duties. Callwood refused the demotion, terminated his employment, and applied for unemployment compensation benefits. The Office of Employment Security found that Callwood was eligible for benefits. Allegheny appealed to the referee who also found that Callwood was eligible for benefits. The Board affirmed. *Allegheny*, 548 Pa. at 358–360, 697 A.2d at 245–246.

Allegheny appealed to this Court which affirmed. This Court relied on *Old Forge Bank v. Unemployment Compensation Board of Review*, 666 A.2d 761 (Pa. Cmwlth.1995), and applied the rule that when a claimant's demotion was justified due to substandard performance, a claimant could still receive benefits if the claimant established that he made a good faith effort in performing his job or his conduct was not tantamount to willful misconduct, and the demotion substantially changed the claimant's benefits or responsibilities. *Allegheny*, 548 Pa. at 360–361, 697 A.2d at 246.

Our Pennsylvania Supreme Court reversed:

Because we hold that the existence of a necessitous and compelling reason in such a case depends solely upon whether the demotion was justified, we reverse the Commonwealth Court's affirmance of the Unemployment Compensation Board of Review's grant of benefits to claimant.

. . . .

. . . [T]he logical focus for determining whether necessitous and compelling reasons exist for a claimant to voluntarily terminate his employment after receiving a demotion is the justification for the demotion. Thus, a claimant does not have necessary and compelling reasons to voluntarily terminate his employment if the demotion was justified because the change in job duties and remuneration

---

**3.** Good cause for voluntarily leaving one's employment results from circumstances which produce pressure to terminate employment that is both real and substantial and which would compel a reasonable person under the circumstances to act in the same manner. *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 654 A.2d 280 (Pa.Cmwlth.1995).

was the result of the claimant's fault. . . .
(Footnote omitted).

*Allegheny,* 548 Pa. at 358, 365, 697 A.2d at 244, 248.

Based on *Allegheny,* the Board did not err when it focused its inquiry on whether the demotion of Claimant was justified.[4] Employer's contention[5] that the Board should have determined whether the change in the terms and conditions of Claimant's employment was substantial enough to constitute a necessitous and compelling reason for the employee to leave work is contrary to the established case law.[6]

■ Employer next contends that the Board erred when it relied on the lack of an Employer policy regarding the use of the County's telephones to determine that Claimant was eligible for benefits. This Court does not agree. Fascio informed Claimant by letter dated July 22, 2004,

that she was demoted because she "exhibited very poor judgment in making personal calls from your . . . assigned office on Wednesday, July 14, 2004." Letter from Joanne M. Fascio to Claimant, July 22, 2004, at 1. If Claimant violated a policy, the Board could and should have used that policy violation to determine that the demotion was justified or to evaluate whether, in fact, Claimant exhibited "very poor judgment." While the violation of a policy is certainly not the only way to justify a demotion,[7] the Board did not err when it based its decision in part on the fact that Employer had no telephone policy, or, more important, that the demotion was unjustified.

Accordingly, this Court affirms.

### ORDER

AND NOW, this 21st day of October, 2005, the order of the Unemployment

---

4. The dissent asserts that Claimant was not demoted because she did not receive a reduction in salary or benefits when her job title was changed to 4R Specialist. Therefore, an inquiry into the justification for the demotion is unnecessary. Employer has never challenged the premise that Claimant was demoted. In fact, at the hearing before the referee, Joanne M. Fascio (Fascio), Employer's director of professional services and consulting, when asked why Claimant resigned, testified, "Because we had demoted her back to her original—the position she was originally hired for." Notes of Testimony, November 3, 2004, at 9. Further, in *Korpics v. Unemployment Compensation Board of Review,* 833 A.2d 1217 (Pa.Cmwlth.2003), this Court determined the proper inquiry in these situations is whether the demotion of an employee was justified, under *Allegheny,* when there was no reduction in the employee's salary.

Also, the dissent asserts that even if Claimant were demoted, the Board's application of *Allegheny* was improper. However, *Allegheny* controls, and the Board did not err in its application of *Allegheny.*

5. Employer's reliance on *McCarthy v. Unemployment Compensation Board of Review,* 829 A.2d 1266 (Pa.Cmwlth.2003) is misplaced be-

cause *McCarthy* dealt with an employee who left work to preserve retirement benefits not an employee who quit when faced with a demotion.

6. Because the inquiry of whether Claimant's demotion resulted in a substantial change in her duties and responsibilities is not relevant, this Court need not address Employer's second issue, that Claimant failed to prove a substantial change in her job duties as a result of her demotion.

7. In *Allegheny,* the demotion was justified on the basis of Callwood's poor performance, and actually presented a thornier question. If, under *Allegheny,* a claimant is denied benefits after a demotion because the employer's reasons for the demotion were justified, a claimant who was working to the best of his ability but did not do a good job and was demoted would receive no protection. *See* James Bradley and Daniel R. Schuckers, *Trends in Unemployment Compensation Law,* 71 Pennsylvania Bar Association Quarterly 116, 118 n. 14 (2000). However, that is an issue for another day.

Compensation Board of Review in the above-captioned matter is affirmed.

## DISSENTING OPINION BY Judge LEAVITT.

I respectfully dissent. I believe that the present case is factually distinguishable from *Allegheny Valley School v. Unemployment Compensation Board of Review*, 548 Pa. 355, 697 A.2d 243 (1997), making the relevant inquiry not Employer's justification for changing Claimant's job duties but, rather, whether the terms of Claimant's employment have substantially changed. I also believe that the Board, in its application of *Allegheny Valley*, improperly shifted the ultimate burden of proof to Employer.

It is a well-settled principle that an unemployment compensation claimant bears the burden of demonstrating "necessitous and compelling" reasons for voluntarily terminating her employment, as acknowledged in *Allegheny Valley*. *Id.* at 361, 697 A.2d at 246. Although the Board is the ultimate finder of facts, whether cause is necessitous and compelling is a question of law subject to appellate review. *Willet v. Unemployment Compensation Board of Review*, 59 Pa.Cmwlth. 500, 429 A.2d 1282, 1284 (1981). As noted by the majority, *Allegheny Valley* established that "the logical focus for determining whether necessi-

tous and compelling reasons exist for a claimant to voluntarily terminate [her] employment after receiving a demotion is the justification for the demotion." *Allegheny Valley* at 365, 697 A.2d at 248. In so holding, however, the Court reasoned that "a claimant does not have necessary and compelling reasons to voluntarily terminate [her] employment if the demotion was justified *because the change in job duties and remuneration* was the result of claimant's fault." *Id.* (emphasis added). As the emphasized text makes clear, the Court's holding is premised on the notion that a demotion involves a change in an employee's responsibilities *and* a corresponding reduction in salary. Thus, in a case where an employee claims that she quit because she was demoted, our initial inquiry involves a question of law: whether both of those factors are present so as to constitute a demotion. If so, then the justification analysis is applicable.

In this case, the Board found that "although the claimant's responsibilities would be reduced, there would be no reduction in her salary or benefits." Board Opinion at 2; Finding of Fact No. 19 (F.F.___). These facts are quite different from those in *Allegheny Valley*, where the Claimant's annual salary was reduced from $18,725 to $14,000.[1] *Allegheny Valley*, 548

---

1. The majority suggests that Employer's acknowledgment that it demoted Claimant is somehow dispositive. Slip Opinion at 7, n. 4. I disagree. Regardless of whether one or both parties refer to an employer's action as a "demotion," I believe that this is a legal question, like any inquiry into whether cause for quitting was necessitous and compelling. The Court in *Allegheny Valley* defined a demotion both in terms of a change in job duties *and* a corresponding reduction in salary, and, in my view, both of those factors must be present to trigger the *Allegheny Valley* analysis. I acknowledge that in *Korpics v. Unemployment Compensation Board of Review*, 833 A.2d 1217 (Pa.Cmwlth.2003), this Court applied *Allegheny Valley* in a situation where an employee lost certain supervisory responsibilities with no reduction in salary. In that case, however, we were not confronted with the threshold issue of whether, as a matter of law, the claimant was demoted for purposes of the *Allegheny Valley* analysis. Thus, the majority in *Korpics* proceeded directly to the justification analysis and concluded that the claimant's demotion was justified. Interestingly, we acknowledged that that inquiry involved a legal question. We did not, as do the Board and the majority in this case, attempt to assume the role of super employer and substitute our judgment for that of the employer.

Pa. at 358–359, 697 A.2d at 245. *Allegheny Valley* is therefore distinguishable from the present case in this crucial respect and, in my view, inapposite.[2] In other words, inquiry into the justification for Claimant's so-called demotion is unnecessary. *See also Anchor Darling Valve Co. v. Unemployment Compensation Board of Review*, 143 Pa.Cmwlth. 171, 598 A.2d 647, 650 (1991) (noting that "compensation for self-perceived demotions or loss of job prestige is not provided for under the Act."). Because Claimant voluntarily quit her job after her job duties were changed, I would analyze this case like any other involving a change in terms of employment.

As stated above, an unemployment compensation claimant who has voluntarily quit her job bears the burden of establishing a necessitous and compelling cause for her decision. The claimant must establish that: 1) circumstances existed which produced real and substantial pressure to terminate employment; 2) like circumstances would compel a reasonable person to act in the same manner; 3) she acted with ordinary common sense; and 4) she made a reasonable effort to preserve employment.

*Fitzgerald v. Unemployment Compensation Board of Review*, 714 A.2d 1126, 1129 (Pa.Cmwlth.1998). "The question of whether a unilateral change in terms of employment constitutes 'cause of a necessitous and compelling nature' is subject to a substantial change analysis." *McCarthy v. Unemployment Compensation Board of Review*, 829 A.2d 1266, 1270 (Pa.Cmwlth. 2003) (quoting *Kaolin Mushroom Farms v. Unemployment Compensation Board of Review*, 669 A.2d 438, 442 n. 3 (Pa.Cmwlth. 1995)). The impact that the employer's changes have upon the employee, not the employer's reasons for instituting the changes, is the focus of the inquiry. *McCarthy*, 829 A.2d. at 1271.[3]

The Board did not engage in a substantial change analysis, and its factual findings are lacking on that issue. The extent of the Board's findings in this regard is that "although the claimant's responsibilities would be reduced, there would be no reduction in her salary or benefits." Board Opinion at 2; F.F. 19. Without additional specific findings on the nature of the changes in Claimant's responsibilities, and the impact those changes had on her, it is impossible to determine whether those

---

2. The remuneration factor is crucial in light of the largely economic objectives of Pennsylvania's Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–914. *See Allegheny Valley*, 548 Pa. at 363, 697 A.2d at 247 (noting that the Law was enacted to address the "serious menace" of "economic insecurity due to unemployment") (quoting Section 3 of the Law, 43 P.S. § 752). When an employee stands to lose money as well as job responsibilities as a result of a managerial decision, it stands to reason that the "serious menace of economic insecurity" will come into play. This point was evidently not lost on the Court in *Allegheny Valley* since it essentially held that an unjustified demotion involving both of those factors automatically provides an employee with necessitous and compelling reasons to quit.

3. The majority opines that *McCarthy* applies only in cases where an employee quits in order to preserve retirement benefits. Slip Opinion at 7, n. 5. I disagree. The principles cited in *McCarthy*, and in the above text, apply in all voluntary quit cases where a substantial change in employment is alleged. Indeed, several of the cases from which the *McCarthy* court derived those principles involved claimants who left work for reasons unrelated to retirement benefits. *See, e.g., Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 358–359, 378 A.2d 829, 832–833 (1977) (repeated incidents of racial prejudice); *Kaolin Mushroom Farms v. Unemployment Compensation Board of Review*, 669 A.2d 438, 442 n. 3 (Pa.Cmwlth. 1995) (unilateral change in base wage, overtime pay and product packaging methods).

changes were substantial and whether "like circumstances would compel a reasonable person" to voluntarily quit. *Fitzgerald.*[4] Because the foregoing inquiries are within the province of the Board, I would remand this matter for further factual findings and a substantial change analysis.

Assuming, *arguendo,* that *Allegheny Valley* is controlling, I disagree with the Board's application of the "justification principle" in this case. In any voluntary quit case, the claimant bears the burden of proving that she is entitled to benefits because she is unemployed through no fault of her own. *Allegheny Valley,* 548 Pa. at 365, 697 A.2d at 248 (citing Sections 3 and 402(b) of the Unemployment Compensation Law). This means that a claimant who leaves employment following a demotion bears the burden of proving that the demotion was not justified. The burden should not shift to the employer to prove the obverse.[5] In this case, the Board did exactly that, and it improperly treated this case as if it were a willful misconduct case.

In its legal discussion, the Board concluded that because Employer "ha[d] no specific policy regarding the use of County telephones by its employees ... the Board does not agree that the claimant committed misconduct or even exercised poor judgment." Board Opinion at 3.[6] Whether Employer had a specific policy for phone usage would be a relevant inquiry if Claimant had been discharged since, in that situation, the burden would have rested on Employer to show that the discharge was in accordance with its own rules. *Charles v. Unemployment Compensation Board of Review,* 764 A.2d 708, 710 (Pa.Cmwlth. 2000). The discharge-for-willful-misconduct analysis is simply not relevant where a claimant's unemployment is due to her voluntary termination of employment.

The stated goal of *Allegheny Valley* was to avoid intruding upon the ability of employers to make "valid demotions." 548 Pa. at 366, 697 A.2d at 248. This goal has not been realized. Instead, the Board believes that *Allegheny Valley* has given it *carte blanche* to decide whether it would make the same management decision. I do not believe that the Supreme Court intended to authorize the Board to substitute its judgment for that of the employer

4. I note that, with respect to the fourth factor identified in *Fitzgerald,* it does not appear that Claimant made a reasonable effort to preserve her employment. She voluntarily quit without attempting to perform her new duties at the same salary and benefit level.

5. Perhaps the demotion case is best analogized to a discrimination claim, where the moving party—the unemployment compensation claimant—makes a *prima facie* showing that she suffered a demotion in salary and job responsibilities. The employer rebuts the claimant's case by offering its reasons for the demotion; however the ultimate burden remains on the claimant to prove that the demotion was not justified. This methodology advances our Supreme Court's stated objective of avoiding any "chilling effect on valid demotions" and, specifically, "the undesirable effect of employers leaving incompetent peo-

ple in positions they are incapable of performing." *Allegheny Valley,* 548 Pa. at 366, 697 A.2d at 248. An employer may certainly be reluctant to demote an employee, even for valid reasons, if it anticipates that in a subsequent unemployment compensation proceeding it will have to convince the Board to agree with its judgment as to a particular demotion.

6. The Board somewhat mischaracterized Employer's reasons for changing Claimant's job duties. It was not simply her use of the phone to conduct personal business but the extent to which Claimant brought her personal problems into the workplace, occupying the time not just of Claimant but also of her coworkers. In addition, there had been complaints about Claimant's performance lodged by Employer's customer, the Allegheny County Department of Human Services, to which Claimant had been assigned.

◼◼◼◼◼◼◼◼◼◼

in every demotion case. However, that is what has happened. The test should not be whether the Board agrees with Employer's decision to relieve Claimant of her supervisory responsibilities but whether Employer can show that its stated reasons for a demotion can be factually supported.[7]

Based on the foregoing analysis, I would vacate the order of the Board and remand for further proceedings consistent with this opinion.

7. The danger to be avoided, as noted by the dissent in *Allegheny Valley*, is the case where an employer without any reason, seeks to force an involuntary quit by substantially reducing an employee's compensation or assigning that employee to a completely different assignment. A brain surgeon has been constructively discharged if he is discharged from his surgical duties by a hospital but reassigned a janitorial position. Under the "substantial change" analysis, this change in duties would constitute a compelling and necessitous reason to resign.