ON LINE INC. d/b/a Sunrise
Sunoco, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted Nov. 9, 2007.

Decided Feb. 1, 2008.

Catherine L.W. Troiani, Pittsburgh, for petitioner.

Janet M. Tarczy, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

On Line, Inc. d/b/a Sunrise Sunoco (Employer) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) granting Sherry A. Heminger (Claimant) unemployment compensation benefits. The Board affirmed the decision of the Unemployment Compensation Referee (Referee) that Employer failed to establish that Claimant's termination was the result of willful misconduct. Finding no error in the Board's adjudication, we will affirm.

Claimant was employed full-time as an assistant manager at Employer's Hempfield Service Plaza on the Pennsylvania Turnpike (Hempfield Station), earning $7.00 per hour. Claimant, along with other employees, operated the single cash register at the Hempfield Station. Claimant and the station manager both submitted daily transaction reports to Employer.[1] However, Claimant was not responsible for reporting inventory to Employer, a task assigned to the manager. As a condition of her employment, Claimant was required to review and sign an employee handbook outlining Employer's employment policies. That employee handbook provided, among other things, that an employee may be disciplined for failing to control inventory and for failing to follow proper cash handling procedures.

In early January 2006, Employer advised Claimant that the Hempfield Station would be permanently closed on January 31, 2007. Employer further advised Claimant that it planned to transfer her to the Penn Hills Service Plaza (Penn Hills Station). Employer did not give Claimant a specific start date, and Claimant did not accept the transfer. Claimant's last day of employment was January 31, 2007.

After the Hempfield Station closed, Employer became aware that a number of questionable refunds, totaling $4,688, had been made between January 11 and January 30, 2007. Additionally, an audit of the Hempfield Station revealed an inventory shortage of approximately $7,558.[2] Employer requested Claimant to come in on February 1 and 2, 2007, to redo the audit of the Hempfield inventory. Claimant was unable to do so on those days because she had a previously scheduled doctor's appointment and job interview.

On February 5, 2007, Claimant filed for unemployment compensation benefits with the Indiana Unemployment Compensation Service Center (UC Service Center), stating that she lost her job when the "plant closed" on January 31, 2007. On February 8, 2007, Employer sent a letter to Claimant stating that Claimant's employment had been terminated effective January 31, 2007, for willful misconduct. The letter stated that Claimant's conduct violated Employer's policies as follows:

1. Severe failure to keep inventory and cash shortages controlled, Handbook Page 28, Item 14;

2. Failure to follow cash handling procedures, Handbook Page 27, Item 4; and

3. Borrowing or theft of funds, property, services or merchandise of the company, Handbook Page 28, Item 6.

---

1. Both managers and assistant managers were required to submit daily reports of the transactions at the Hempfield Station. The daily reports did not reflect whether the cash and inventory of the Hempfield Station were in balance; rather, the reports were balanced by Employer upon receipt. Reproduced Record at 41a, 51a–52a (R.R. _____).

2. On or about January 31, 2007, the inventory from the Hempfield Station was packed and shipped to Employer's Alpine Village location to be re-audited.

R.R. 7a. Thereafter, Employer submitted an employer questionnaire to the UC Service Center stating that Claimant had been terminated for willful misconduct.

On April 18, 2007, the UC Service Center found that Claimant was not discharged for willful misconduct and, thus, was entitled to unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law).[3] On April 27, 2007, Employer filed an appeal, asserting that Claimant had been terminated for violating Employer's policies, which constituted willful misconduct. Certified Record, Item No. 7 (C.R. ____).

A Referee conducted a hearing on May 15, 2007. At the inception of the hearing, the Referee stated that the issue to be resolved was whether Claimant's unemployment was caused by willful misconduct, thereby rendering her ineligible for benefits under Section 402(e).[4]

Employer's witness established that there were inventory losses and several "refunds to departments" that resulted in cash shortages at the Hempfield Station during several of Claimant's shifts. Employer's witness testified that the refunds were unusual because they were done in bulk amounts without supporting documentation, such as a computer-generated receipt or void slip. Employer did not assert that Claimant made the questionable refunds but, rather, that Claimant should have stopped the refunds or reported them to Employer. Similarly, Employer did not present any evidence that Claimant took inventory for her own use. Rather, Employer argued that in not preventing the loss of inventory and the cash shortages, Claimant violated her responsibilities as assistant manager.

In response, Claimant testified that, although she had never made "refunds to departments," she was aware of the individual employee who did refunds in that way.[5] However, Claimant testified that she believed that accounting for refunds this way was appropriate. She explained that in business school, she was taught that a closing business refunds "money to departments ... for their losses." R.R. at 57a. Claimant also testified that she had no knowledge of the alleged inventory losses and that, in any case, inventory was the responsibility of the manager, not the assistant manager.

The Referee affirmed the determination of the UC Service Center that Claimant was entitled to unemployment compensation benefits under Section 402(e) of the Law. The Referee found that "[n]either the [C]laimant nor the [E]mployer are aware of how the refunds or inventory shortage occurred." Referee's Decision, dated May 17, 2007; R.R. at 71a. The Referee therefore concluded that:

---

3. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) provides, in pertinent part:

> An employe shall be ineligible for compensation for any week—
>
> * * *
>
> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act ...

43 P.S. § 802(e).

4. The Notice of Hearing issued to the parties also indicated that the specific issue to be considered in the appeal was

> Section 402(e)-Whether claimant's unemployment was due to discharge or temporary suspension from work for willful misconduct connected with employment.

C.R. Item No. 9.

5. Claimant testified that she was not the only employee responsible for cashing out the register; the employees working the shift in question would take turns.

While the [E]mployer may have determined that the [C]laimant was an unsatisfactory assistant manager based on [C]laimant's inability to properly control cash receipts and store inventory, thereby justifying the [C]laimant's termination, the denial of unemployment compensation benefits cannot be predicated on such grounds.

Referee's Decision, dated May 17, 2007; R.R. 72a. In short, the Referee concluded that Employer failed to establish that Claimant's termination was a result of her willful misconduct. Accordingly, she was found eligible for benefits.

Employer appealed to the Board. Employer challenged the Referee's determination that Claimant's failure to stop or report the alleged theft to Employer did not amount to willful misconduct under Section 402(e). Employer also asserted that the Referee erred by not considering whether Claimant was disqualified from receiving benefits for having voluntarily quit her job or for refusing suitable work.[6] The Board credited Claimant's testimony and resolved all evidentiary conflicts in her favor. Ac-

cordingly, it affirmed the Referee's award of benefits. The present appeal followed.

On appeal,[7] Employer raises the same issues as before the Board. It argues, first, that Claimant is ineligible by reason of her willful misconduct. Second, Employer contends that Claimant is ineligible because she voluntarily quit. We consider the issues *seriatim.*

■ Employer first argues that the record establishes that Claimant's willful misconduct is founded on the following: she willfully disregarded her responsibilities as assistant manager; she violated the employee handbook; and she did not meet the reasonable expectations of her employer by failing to stop or to report the alleged "theft."

Willful misconduct has been defined as the "(a) wanton and willful disregard for an employer's interests, (b) deliberate violation of an employer's rules, (c) disregard for standards of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interests or an employee's duties and obligations."

---

6. Sections 402(a) and (b) of the Law state, in relevant part, as follows:

An employe shall be ineligible for compensation for any week-

(a) In which his unemployment is due to failure, without good cause, either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment officer or by any employer, irrespective of whether or not such work is in "employment" as defined in this act ...

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act....

43 P.S. § 802(a) and (b).

7. The scope of appellate review in unemployment compensation cases is limited to deter-

mining whether constitutional rights were violated, whether errors of law were committed or whether findings of fact are supported by substantial evidence. *Grieb v. Unemployment Compensation Board of Review,* 573 Pa. 594, 599, 827 A.2d 422, 425 (2003). "In unemployment compensation proceedings, the Board is the ultimate factfinder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. Findings made by the Board are conclusive and binding on appeal if the record, when examined as a whole, contains substantial evidence to support those findings." *Kelly v. Unemployment Compensation Board of Review,* 776 A.2d 331, 336 (Pa.Cmwlth.2001). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Moorehead v. Civil Service Commission of Allegheny County,* 769 A.2d 1233, 1238 (Pa.Cmwlth.2001).

*DeRiggi v. Unemployment Compensation Board of Review,* 856 A.2d 253, 255 (Pa. Cmwlth.2004) (quoting *Caterpillar, Inc. v. Unemployment Compensation Board of Review,* 550 Pa. 115, 123, 703 A.2d 452, 456 (1997)). This Court has held that an employee's failure to report, or withholding of, information about another employee's misconduct constitutes a disregard of expected standards of behavior *only* where the employee's actions are *affirmatively deceptive.*

In *Groover v. Unemployment Compensation Board of Review,* 134 Pa.Cmwlth. 617, 579 A.2d 1017, 1019–20 (1990), we held that absent a specific requirement by the employer, an employee has no duty to report a co-worker's misconduct to an employer.[8] In *Groover,* we stated:

> Claimant's failure to report her co-worker's questionable acts to her employer was reprehensible and caused regrettable consequences. However, where it is alleged that an employee's actions breached a duty, this court's role is not to decide what the employee should have done, but rather what she was obligated by a duty to her employer to do. *We have found no law,* nor has any been supplied by counsel, to support the contention *that an employee's knowledge of a co-worker's questionable acts creates a duty to report those acts to her employer.* To impose such a duty, would require an employee with knowledge of a co-worker's questionable acts to either report the co-worker and alienate those whose acts did not constitute misconduct or to remain silent and risk suspension or discharge at the hand of an employer in whose judgment the acts did consti-

tute misconduct. We conclude that the imposition of such a duty is neither required by existing law nor consistent with sound judgment. Consequently, we hold that there is no such duty.

\* \* \*

■ In the present case, it is not disputed that claimant neither participated in, nor encouraged, [co-worker's questionable conduct]. There is also no suggestion in the record nor by the parties that claimant ever lied to conceal her co-worker's misconduct. Clearly, claimant has not affirmatively acted to deceive employer. *We conclude that her failure to disclose information regarding a co-worker's misconduct does not constitute a disregard of expected standards of behavior,* as a result, no willful misconduct has been established.

*Id.* at 1019–20 (emphasis added). In sum, it is not willful misconduct for an employee not to report "a co-worker's questionable acts" to the employer because employees have no such duty. On the other hand, employees may not conceal a co-worker's misconduct. *Id.*

■ An employee's theft from an employer is willful misconduct. An act of theft disregards the employer's interests and the standards of behavior that the employer has a right to expect of an employee. *Temple University of the Commonwealth System of Higher Education v. Unemployment Compensation Board of Review,* 565 Pa. 178, 182–183, 772 A.2d 416, 418 (2001). *Groover* established that an employee does not have a duty to report the "questionable acts" of a co-worker

---

8. In *Groover,* the co-worker's misconduct consisted of making an anonymous obscene phone call to the employer's place of business in the presence of the claimant. The employer discharged an employee for making the call, but it *was* the wrong employee. The claimant did not speak up even when the wrong employee was disciplined. This Court held that the claimant did not commit willful misconduct because she had no duty to identify the true caller.

in the absence of a specific directive from their employer to do so. Whether an employee is excused from reporting a co-worker's commission of a crime, such as theft, was not addressed in *Groover*.[9]

In this case, Employer never established that what Claimant observed with respect to the refunds was "theft." Claimant thought the refunds were being accounted for appropriately, and her testimony in this regard was uncontradicted and accepted by the Board as credible. An employee cannot be expected to report a co-worker's conduct that is not understood to be problematic. In any case, the "refunds to departments" were disclosed in the daily reports filed with Employer.

The Referee found that neither Employer nor Claimant could explain the shortages at the Hempfield Station. In effect, Employer seeks to make Claimant liable for the misconduct of others simply because she held the title of assistant manager, a job that paid $7.00 per hour. Because Claimant did not disregard her responsibilities as assistant manager, violate the employee handbook, or fail to meet the reasonable expectations of her employer, the Board did not err in holding that Claimant's termination was not the result of willful misconduct.

■ Employer next argues that the Board erred in failing to consider whether Claimant was ineligible by reason of her voluntary termination or refusal of suitable employment. In response, the Board contends that Employer did not raise either issue to the Referee. They are, according to the Board, waived.

The regulations pertaining to unemployment compensation proceedings provide that the specific issues to be considered must be set forth in the notice of the appeal of the UC Service Center's decision. 34 Pa.Code § 101.85(a).[10] The referee is permitted to consider only those issues expressly ruled upon by the UC Service Center, unless the parties agree otherwise. 34 Pa.Code § 101.87.[11] Finally, the regulations provide that

> issues not previously considered or raised will not be considered by the Board, either upon application for, or in the determination of an appeal unless the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.

34 Pa.Code § 101.107(a).

In this case, Employer submitted a separation application and employer question-

***

9. In *DeRiggi v. Unemployment Compensation Board of Review*, 856 A.2d 253 (Pa.Cmwlth. 2004), the claimant argued that under *Groover* he was not required to report the theft of a shower curtain rod by a co-worker. We did not reach this argument, finding that because the claimant took steps to deceive his employer, he could not invoke *Groover*. We affirmed the Board's holding that the claimant was ineligible for unemployment compensation benefits by reason of his willful misconduct.

10. The regulation states:

> The tribunal by which the appeal is to be heard shall schedule the appeal promptly for hearing and give at least 7 days' notice of the hearing to the parties and their counsel or authorized agent of record, specifying

the date, hour and place of hearing and specific issues to be covered at the hearing. 34 Pa.Code § 101.85(a).

11. The regulation states:

> When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case may, with the approval of the parties, be heard, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby.
>
> 34 Pa.Code § 101.87.

naire to the UC Service Center stating that Claimant had been terminated for willful misconduct under Section 402(e). The UC Service Center rendered a determination finding that Claimant was entitled to unemployment compensation benefits because she had not been terminated for willful misconduct. Employer's appeal asserted that Claimant had been properly terminated for willful misconduct in violation of Employer's policies. The Notice of Hearing issued by the Referee stated that the specific issue to be considered in the appeal was

> Section 402(e)-Whether claimant's unemployment was due to discharge or temporary suspension from work for willful misconduct connected with employment.

C.R. Item No. 9. The Referee repeated this point at the opening of the hearing.

Although there was testimony regarding a possible transfer of Claimant from the Hempfield Station to the Penn Hills Station, the possibility of continued employment was not the issue.[12] Employer argues that because the testimony made reference to the possibility of Claimant working at Penn Hills, Claimant gave "implied consent" for the Referee to consider voluntary quit and suitable employment issues. We disagree. This testimony relayed background information but in no way changed the stated legal issues. We hold that the issues of Claimant's voluntary termination or her refusal of suitable employment have not been preserved but, rather, waived. *See Glesk v. Unemploy-*

*ment Compensation Board of Review,* 106 Pa.Cmwlth. 202, 525 A.2d 1249, 1251 (1987) (to allow the Board to consider issues outside those presented to the UC Service Center would be "fundamentally unfair and, absent mutual consent ..., prohibited."). Therefore, we will not address the merits of Employer's claim that Claimant voluntarily quit her job.[13]

For the foregoing reasons, we will affirm the Board's decision that Claimant is entitled to unemployment compensation benefits.

### ORDER

AND NOW, this 1st day of February, 2008, the order of the Unemployment Compensation Board of Review dated July 2, 2007 in the above captioned matter is hereby AFFIRMED.

---

12. The first reference in the record to the question of whether Claimant's benefits should be denied because she refused "suitable employment" was in Employer's closing remarks before the Referee. R.R. 60a. The first reference to the issue of whether Claimant's benefits should be denied on the basis of "voluntary termination" was in Employer's notice of appeal to the Board. R.R. 77a.

13. *See* PA. R.A.P. 1551(a). Rule 1551(a) states, in relevant part:

> Review of quasijudicial orders shall be conducted by the court on the record made before the government unit. No question shall be heard or considered by the court which was not raised before the government unit....

PA. R.A.P. 1551(a).