# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Life Pittsburgh, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 230 C.D. 2015 |
| | : Submitted: August 14, 2015 |
| Unemployment Compensation | : |
| Board of Review, | : |
| | : |
| Respondent | : |

BEFORE:     HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  November 20, 2015**


Life Pittsburgh (Employer) petitions for review of the January 28, 2015 order of the Unemployment Compensation Board of Review (Board) concluding that Kayla D. Johnson (Claimant) was not ineligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] because she had cause of a necessitous and compelling nature for leaving her employment with Employer.  We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides, in relevant part, that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

Claimant filed for unemployment compensation benefits following her departure from employment as a Certified Nurses Assistant with Employer and a Notice of Determination was issued on September 19, 2014 concluding that Claimant was not disqualified from receiving benefits by Section 402(b) of the Law. (Record Item (R. Item) 3, Notice of Determination; R. Item 16, Board's Decision and Order, Findings of Fact (F.F.) ¶1.) Employer appealed and a hearing was held before the Referee on October 22, 2014. (R. Item 4, Employer's Appeal; R. Item 7, Hearing Transcript (H.T.).) At the hearing, Claimant appeared and offered testimony, and Aaron Krchmar, Senior Director of Operations, Johanna Dickman, Director of Participant Services, and Terrence Brady, Director of Human Resources, appeared for Employer but did not offer any testimony. (R. Item 7, H.T. at 1-2.) Following the hearing, the Referee issued an October 29, 2014 decision and order with findings of fact that concluded that Claimant was ineligible to receive unemployment compensation benefits because she had failed to afford Employer a reasonable opportunity to remedy the problem prior to resigning. (R. Item 8, Referee's Decision and Order.) Claimant appealed to the Board and the Board reversed the Referee. (R. Item 16, Board's Decision and Order.)

In its decision, the Board made the following findings of fact:

2. On August 1, 2014, [Claimant] went to a going away party for a coworker which was at a hotel.

3. One of the attendees at the party was the grandson of one of the participants for whom [Claimant] provided care.

4. The grandson approached [Claimant] and made complaints about [Claimant] not taking proper care of his grandfather, and he threatened to get [Claimant] fired, and also to break her face.

2

5. When [Claimant] informed hotel security, they [sic] called the police on the participant's grandson and the police came to the hotel.

6. [Claimant] informed [Employer] of the incident. [Employer] removed the participant from [Claimant's] care.

7. On August 13, 2014, [Claimant] was in the home of one of her patients and was taking care of the patient.

8. When [Claimant] was in the patient's home, the landlord confronted [Claimant], called her the "n" word, said that she and her coworkers were dumb a** bi* * *es, and screamed that he wanted to kill [Claimant].

9. [Claimant] called the police on this landlord.

l0. [Claimant] informed [Employer] of the incident.

11. [Employer] removed the participant from [Claimant's] care and added the participant whose grandson had threatened [Claimant].

12. [Claimant] was dissatisfied because she did not believe that she had adequate time to take care of her patients, given the schedule of times when the vans would arrive to pick them up.

13. On the weekend proceeding September 1, 2014, [Claimant] was at the Pittsburgh Rib Fest when she saw the grandson of the participant who had previously threatened her.

14. She believed that the grandson of the participant was following her, and she became afraid.

15. On September 1, 2014, [Claimant] wrote a resignation letter which she delivered to the employer on September 2, 2014.

(R. Item 16, Board's Decision and Order, F.F. ¶¶2-15.) Based on these findings, the Board concluded that:

> [Claimant] faced threats and harassment as the result of her employment. Those threats were realistic and caused [Claimant]

3

reasonable anxiety. Although [Employer] was not directly responsible for the actions of the participants' grandson and landlord, [Employer] did not take any effective action to deal with the problem. There is no evidence that [Employer] contacted anyone about the situations or investigated the incidents. In fact, [Employer] returned the participant whose grandson had threatened [Claimant] to her schedule.

It can be expected that someone in [Claimant's] position might be required to deal with difficult individuals. However, physical threats and profane verbal abuse by parties other than the participants is not something that an employee should be expected to tolerate. [Claimant] has shown that she had an intolerable working environment, which created cause of a necessitous and compelling nature for her to voluntarily quit.

(*Id.* at 3.) Employer petitioned this Court for review of the Board's order.

Whether a claimant had a cause of a necessitous and compelling nature to resign from employment is a question of law over which this Court has plenary review. *Western and Southern Life Insurance Co. v. Unemployment Compensation Board of Review*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006). When a claimant has voluntarily terminated employment, the burden to prove cause of a necessitous and compelling nature is shouldered by the claimant. *PECO Energy Co. v. Unemployment Compensation Board of Review*, 682 A.2d 58, 60 (Pa. Cmwlth. 1996). Neither Section 402(b) nor other provisions in the Law define the terms necessitous and compelling; however, the courts have interpreted the statutory language to require that a claimant demonstrate that: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve the employment. *Diversified Care Management, LLC v. Unemployment Compensation Board of Review*, 885 A.2d 130, 136 (Pa.

4

Cmwlth. 2005). Where issues of workplace safety are alleged to have produced real or actual pressure to voluntarily resign from employment, a claimant must present objective evidence to demonstrate that the claimant's fear or belief that conditions were unsafe was more than just speculative. *Green Tree School v. Unemployment Compensation Board of Review*, 982 A.2d 573, 578 (Pa. Cmwlth. 2009); *Hoy v. Unemployment Compensation Board of Review*, 391 A.2d 1144, 1145 (Pa. Cmwlth. 1978). In addition, the claimant must show that a reasonable attempt was made to advise the employer of the problem and permit the employer the opportunity to solve the problem but that the employer's response gave the claimant no choice but to resign. *Department of Corrections v. Unemployment Compensation Board of Review*, 547 A.2d 470, 474 (Pa. Cmwlth. 1988).

In the instant matter, the Board found that Claimant delivered her resignation to Employer one day after she encountered the grandson of a participant at a public event who had previously threatened her. (R. Item 16, Board's Decision and Order, F.F. ¶¶13-15.) Employer argues that the Board's factual findings should have been limited to this event and Claimant's subsequent resignation, and that by examining events from the preceding month the Board went beyond the factual matrix at the time of separation. We disagree. [2]

Employer relies upon *Hussey Copper Ltd. v. Unemployment Compensation Board of Review*, 718 A.2d 894 (Pa. Cmwlth. 1998), where we held that the claimant failed to establish a cause of a necessitous and compelling reason

---

[2] In an unemployment compensation appeal, this Court's scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of facts are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *On Line Inc. v. Unemployment Compensation Board of Review*, 941 A.2d 786, 788 n.7 (Pa. Cmwlth. 2008).

for her voluntary termination from employment and was therefore ineligible for benefits under Section 402(b) of the Law. In *Hussey*, this Court concluded that when an employee is "terminated or quits, the 'factual matrix at the time of separation governs' as to whether the claimant is entitled to benefits, and the relevant inquiry in determining the cause of a claimant's unemployment is confined to the surrounding circumstances existing at the time of the claimant's departure." *Id*. at 899. The claimant in *Hussey* sought to establish a necessary and compelling reason for separating from employment by referencing incidents that had taken place over the course of her employment, but which she had not previously addressed with her employer even though a grievance system was available to the claimant. *Id*. at 900.

In contrast, in the instant matter the Board found that the events which led to Claimant's resignation did not take place over years or even months but over the period of a single month and Claimant did seek to remedy the problems through available channels. *Cf., Umedman v. Unemployment Compensation Board of Review*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012) (two-month delay between incident and discharge for willful misconduct was not too temporally remote to bar denial of benefits). The Board further found that the last incident—Claimant's credible belief that the participant's grandson who had previously threatened her was following her at a public event—was not in and of itself the precipitating event for her resignation, but the culmination of a pattern of events that produced real and substantial pressure upon Claimant and which Employer failed to address. *Collier Stone Co. v. Unemployment Compensation Board of Review*, 876 A.2d 481, 485 (Pa. Cmwlth. 2005) (the claimant need not notify the employer of each and

6

every incident of sexual harassment so long as a claimant has given the employer the opportunity to understand the problem and take steps to resolve it).

Moreover, the factual findings made by the Board examining the entire month rather than the days surrounding the final incident go directly to the burden placed upon Claimant to demonstrate that she made a reasonable effort to maintain employment by advising Employer of the conditions of her employment putting her at risk, that she provided Employer with the opportunity to resolve the problems, and that Employer failed to do so. The purpose of the rule that the Board restrict itself to the "factual matrix at the time of separation," is to prohibit both parties from introducing into the Board's inquiry events, facts or issues from the entirety of the employment relationship regardless of how irrelevant or removed from the time of separation. *Hussey*, 718 A.2d at 900; *Lehigh County Community College v. Unemployment Board of Review*, 473 A.2d 727, 729-730 (Pa. Cmwlth. 1984).

Under Employer's interpretation of the rule, which would focus only on the events immediately preceding termination from employment, claimants and employers would be severely inhibited in their ability to satisfy or rebut their respective evidentiary burdens by an arbitrarily restrictive temporal window. Employer's interpretation would also bar claimants from receiving unemployment compensation who have a necessitous and compelling cause to leave employment based upon a pattern of harassment. *Taylor v. Unemployment Board of Review,* 378 A.2d 829 (Pa. 1977) (pattern of racial abuse created continuing racial tension that compelled claimant to leave employment); *Mercy Hospital of Pittsburgh v. Unemployment Compensation Board of Review*, 654 A.2d 264, 266 (Pa. Cmwlth. 1995) (years of verbal harassment by co-workers that employer could not alleviate

7

compelled claimant to leave employment); *Tedesco Manufacturing Co., Inc. v. Unemployment Compensation Board of Review*, 552 A.2d 754, 756 (Pa. Cmwlth. 1989) (claimant who was sexually harassed for six months had a necessitous and compelling cause to leave employment). Employer's interpretation is contrary to the text, intent, and structure of the Law and the precedent of this Court and our Supreme Court. The Board restricted its inquiry to the factual matrix existing at the time of separation and did not err by going beyond the circumstances surrounding Claimant's resignation in its factual findings.

Next, Employer argues that Claimant failed to show by substantial evidence that she took reasonable steps to preserve her employment, that Employer did not adequately address her concerns, and that her fears regarding her safety were objective.

Claimant testified that she was initially threatened by the participant's grandson at a going away party for one of Claimant's coworkers because the grandson believed that Employer's employees were not taking proper care of his grandfather; security for the venue ultimately called the police. (R. Item 16, Board's Decision and Order, F.F. ¶¶2-5; R. Item 7, H.T. at 6, 17.) The following day, Claimant informed her supervisor of the incident and her supervisor assured Claimant that the participant would be taken off Claimant's schedule. (R. Item 16, Board's Decision and Order, F.F. ¶¶2-4; R. Item 7, H.T. at 6.) Employer did not take any other steps to address the problem with the participant's grandson, although Employer does have an interdisciplinary team to address issues with participants' families and Claimant requested mediation or other intervention. (R. Item 16, Board's Decision and Order, F.F. ¶6, Discussion at 3; R. Item 7, H.T. at 8, 22, 23.)

8

Claimant testified that on August 13, 2014, ten days after the incident with the participant's grandson, Claimant was assisting another participant when she was harassed and threatened by the participant's landlord. (R. Item 16, Board's Decision and Order, F.F. ¶¶7-8; R. Item 7, H.T. at 8.) Claimant called her supervisor and the police. (R. Item 16, Board's Decision and Order, F.F. ¶¶9-10; R. Item 7, H.T. at 9.) Claimant had previously advised her supervisor that the participant's landlord hounded her when she was providing care to the participant and behaved strangely but no action had been taken by Employer to address the situation. (R. Item 16, Board's Decision and Order, Discussion at 3; R. Item 7, H.T. at 6.)

Directly following the incident with the landlord, Claimant spoke with her supervisor and Ms. Dickman, the Director of Participant Services, and was assured that the participant would be taken off her schedule and that Ms. Dickman would contact the participant and his landlord to address what happened. (R. Item 16, Board's Decision and Order, F.F. ¶11; R. Item 7, H.T. at 10.) Claimant was then issued a new schedule; however, in place of the participant whose landlord had threatened her, Claimant was scheduled to again provide service for the participant whose grandson had threatened her. (R. Item 16, Board's Decision and Order, F.F. ¶11; R. Item 7, H.T. at 10.) Claimant raised this issue with her supervisor and was instructed to bring it to the attention of the scheduler, which Claimant promptly did, at which point Claimant was instructed to speak with the scheduling supervisor; the scheduling supervisor subsequently provided Claimant with a new schedule that did not include the participant whose grandson had threatened her or the participant whose landlord had threatened her. (R. Item 16, Board's Decision and Order, Discussion at 3; R. Item 7, H.T. at 11.)

9

In addition to the specific threats, Claimant raised what she believed was the underlying issue with Employer—that the participants were scheduled too close together, preventing Claimant and her coworkers from having sufficient time to provide the proper care and leading the participants' families to take their frustrations out on Employer's employees. (R. Item 16, Board's Decision and Order, F.F. ¶12; R. Item 7, H.T. at 13-15.) On August 19, 2014, Claimant met with Employer's Chief Officer and explained the threats and the scheduling difficulties; Claimant was informed that the scheduling problem was being addressed and was asked to give Employer time to fix the problem. (R. Item 16, Board's Decision and Order, F.F. ¶ 12, Discussion at 3; R. Item 7, H.T. at 13-14, 20.) Although Employer issued new schedules following this meeting, the schedules did not fix the problem. (R. Item 16, Board's Decision and Order, F.F. ¶ 12, Discussion at 3; R. Item 7, H.T. at 21.)

Finally, on September 1, 2014, Claimant encountered the participant's grandson who had previously threatened her at the Pittsburgh Rib Fest. (R. Item 16, Board's Decision and Order, F.F. ¶¶13-14; R. Item 7, H.T. at 18-19, 22.) Later that night, Claimant wrote her resignation letter and the next day, after discussing the issues with her supervisor, Claimant submitted her letter of resignation. (R. Item 16, Board's Decision and Order, F.F. ¶15; R. Item 7, H.T. at 19.)

Although Ms. Dickman was present at the hearing, neither she nor any other witness for Employer offered testimony or other evidence to rebut Claimant's testimony. (R. Item 7, H.T. at 2, 20, 24.) The Board found Claimant to be credible. The facts found by the Board clearly show that Claimant was threatened, Claimant attempted to seek assistance from Employer to address the threats, and Employer failed to provide adequate assistance or support to Claimant. Each fact

10

is supported by substantial evidence in the form of Claimant's credible testimony. In addition, Employer's acknowledgement of the physical and verbal threats as well as the actions it did take, the repetition, and the police response support the Board's finding that Claimant's belief that her working conditions were unsafe was not speculative. *Compare Green Tree School*, 982 A.2d at 578 (subjective fear that autistic students may become unruly with a reduced behavioral management staff was insufficient to establish real, objective safety fears); *Hoy*, 391 A.2d at 1145 (claimants' concern for their safety was real and substantial where employer failed to institute adequate safety measures at convenience store following string of robbery-homicides at similar businesses in the area); *Rapid Pallet v. Unemployment Compensation Board of Review*, 707 A.2d 636, 638 (Pa. Cmwlth. 1998) (faulty condition of employer's truck constituted safety concerns that created real and substantial pressure to resign from employment). The Board did not err in concluding that Claimant satisfied her burden to demonstrate cause of a necessitous and compelling nature to voluntarily resign her employment.

The Board is the ultimate finder of fact, empowered to determine credibility, and weigh and resolve conflicts in the evidence. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. 1985); *Collier Stone*, 876 A.2d at 483. This Court's review of Board's factual findings requires an examination of whether the record contains relevant evidence that a reasonable mind might consider adequate to support a conclusion; this Court's review does not permit it to invade the province of the Board and substitute our own findings for those made by the Board. *Peak*, 501 A.2d at 1388; *Fitzpatrick v. Unemployment Compensation Board of Review*, 616 A.2d 110, 111 (Pa. Cmwlth. 1992). Employer did not challenge any individual factual findings made by the

11

Board.  However, distilled to their essence, Employer's arguments ask this Court to make our own factual findings, specifically findings that would accept Employer's narrative and reject Claimant's testimony, and based upon these findings to reverse the Board.  This we neither can nor will do.

Accordingly, the order of the Board is affirmed.


_____
**JAMES GARDNER COLINS, Senior Judge**


Judge Leadbetter dissents.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Life Pittsburgh,                                    :
                                                    :
                    Petitioner                      :
                                                    :
          v.                                        :  No. 230 C.D. 2015
                                                    :
Unemployment Compensation                           :
Board of Review,                                    :
                                                    :
                    Respondent                      :

# **O R D E R**

AND NOW, this 20th day of November, 2015, the order of the Unemployment Compensation Board of Review in the above-captioned matter is AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**