544 A.2d 1098

Mary Broadus, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs May 18, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Paul W. O'Hanlon,* for petitioner.

*James K. Bradley,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, July 27, 1988:

Mary Broadus appeals an order of the Unemployment Compensation Board of Review which affirmed a referee's decision denying her unemployment benefits under section 402(b) of the Unemployment Compensation Law (voluntary quit).[1]

On appeal, the claimant argues that she had a necessitous and compelling cause for leaving her job, because her employer had materially changed the conditions of her employment.

The referee based his decision upon the following findings of fact:

1. Claimant was last employed by Senior Housing Services since January, 1986 at $4.35/hr. and her last day worked was June 27, 1986.

2. Claimant's duties involved providing personal care to 7 mentally retarded or mentally handicapped older adults at a residential house.

3. Claimant worked with a full-time supervisor during the day.

4. On May 16, 1986, claimant's supervisor was discharged and claimant was asked to perform the duties alone until a new supervisor was hired.

5. Claimant's duties for laundry and some cleaning was delegated to the night supervisor.

6. On May 30, 1986, claimant's salary was increased from $3.35 to $4.35/hr. due to her increased duties.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b).

7. Claimant was dissatisfied with not being able to give the same quality of care to the house and residents while working alone.

8. On June 27, 1986, claimant resigned her position effective July 15, 1986 because a full-time day supervisor was not hired so as to return the house routine to the pre-May 16, 1986 condition for work.

The referee concluded that the claimant had not demonstrated necessitous and compelling cause for voluntarily terminating her employment, stating:

An employer can make reasonable changes in the working conditions which the claimant must accept. Although the Referee realizes claimant's desire to maintain the high quality care, when the duties were changed from a day-time co-worker to working alone, she had to expect a decrease in the quality she could provide. Some duties were delegated to the night-time person so as to make the day-time work manageable. Although there was testimony that claimant's $1.00 per hour raise was to be rescinded it is not clear that this was the reason for her resignation. As such, she is ineligible for benefits under Section 402(b).

The board adopted the referee's decision.

In a case involving a claim for unemployment compensation benefits, the referee's findings of fact are conclusive on appeal, so long as the record contains substantial evidence in support. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 355, 378 A.2d 829, 831 (1977). However, whether a voluntary termination of employment was for a necessitous and compelling cause, as the claimant argues, is a legal conclusion that is always subject to appellate review. *Beattie v. Unemployment Compensation Board of Re-*

*view,* 92 Pa. Commonwealth Ct. 324, 326, 500 A.2d 496, 498 (1985). The claimant bears the burden of proving that she had a necessitous and compelling reason to quit. *Swires v. Unemployment Compensation Board of Review,* 83 Pa. Commonwealth Ct. 367, 370, 477 A.2d 593, 594 (1984). We conclude that the claimant met this burden.

The claimant argues that the referee erred in his legal conclusion that the changes in the claimant's working conditions were reasonable, and that the claimant therefore did not have a compelling reason to leave. The claimant contends that, after the live-in supervisor was terminated, her employer expected her to do the work of two people. After two weeks, the claimant inquired why a replacement had not been hired yet, and asked for a $1.00/hour raise in compensation for the extra work that she was performing. Both parties agree that the employer rescinded the $1.00/hour pay raise after one two-week pay period. Although the referee found that the employer delegated some of the claimant's laundry and cleaning duties to the night supervisor, that delegation constituted only 30% of the claimant's normal responsibilities, by the employer's own estimate.

In *National Aluminum Corporation v. Unemployment Compensation Board of Review,* 59 Pa. Commonwealth Ct. 359, 362, 429 A.2d 1259, 1260 (1981), this court held that:

> Although '[o]ne who voluntarily accepts a job thereby admits to its initial suitability,' a claimant may successfully assert that the employment was so unsuitable as to be a compelling cause for leaving by proving that employment conditions have changed or that the claimant was deceived or unaware of such conditions when entering into the job. Sloss v. Unemployment Compensation Board of Review, 27 Pa. Commonwealth Ct.

528, 531, 367 A.2d 803, 804 (1976); see also Jones v. Unemployment Compensation Board of Review, 35 Pa. Commonwealth Ct. 293, 385 A.2d 639 (1978).

Although it is true that an employer may make reasonable modifications in job assignments, Druzak v. Unemployment Compensation Board of Review, 12 Pa. Commonwealth Ct. 481, 315 A.2d 925 (1974) (half-hour added to work week), a substantial unilateral change in the employment agreement renders the job unsuitable. National Freight, Inc. v. Unemployment Compensation Board of Review, 34 Pa. Commonwealth Ct. 161, 382 A.2d 1288 (1978) (truck-driver subjected to increased truck rent).

We conclude that the claimant faced a substantial unilateral change in her employment situation when she was confronted with running the group care home by herself. Significantly, the claimant testified that she was not able to provide personal care services to individual residents and simultaneously supervise the other residents:

QCL: So, what was it like, to be working, there, at the home?

AC: Oh, it was . . .

QCL: Alone.

AC: . . . quite hectic, because you had people . . . like, when I'm upstairs, washing patients, and washing their hair, or scrubbing the bathrooms or the shower, or running the (inaudible), people downstairs or residents can walk out, at anytime, because we have three residents that will walk out.

QCL: All right.

AC: And you cannot be upstairs, and downstairs, at the same time. (T. p. 11.)

The claimant testified that, during the period in which she ran the home alone, the mental condition of some of the residents began to deteriorate, and that one resident walked away from the center for a ten-hour period. Originally, the claimant's position as a personal care assistant required her, in cooperation with the live-in supervisor, to balance individual attention and personal care of residents, with the exercise of general supervisory control of the house. We find that the change in the claimant's employment conditions, so that she was required to perform these mutually exclusive tasks alone, constituted more than reasonable modifications of the claimant's job. The dramatically increased workload and her concern for the residents' safety gave rise to a necessitous and compelling reason for the claimant to leave her employment.

Accordingly, the order of the board denying the claimant unemployment compensation benefits is reversed.

## ORDER

Now, July 27, 1988, the decision of the Unemployment Compensation Board of Review, No. B-253097, dated September 24, 1986, is reversed.