**Deborah A. FITZGERALD, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 15, 1998.
Decided July 9, 1998.
Reargument Denied Aug. 27, 1998.

Roger D. Horgan, Pittsburgh, for petitioner.

Robert C. Schramm, Harrisburg, for respondent.

Before McGINLEY and LEADBETTER, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Deborah A. Fitzgerald (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) finding Claimant ineligible for compensation under Section 402(b) of the Unemployment Compensation Law (Law) [1] because she voluntarily terminated her employment without cause of a necessitous and compelling nature. We reverse.

On August 8, 1997, Claimant submitted a letter of resignation to the director of nursing at Sidney Square (Employer). The Office of Employment Security (OES) determined Claimant was ineligible for benefits under Section 402(b) of the Law, reasoning that a person working in a nursing facility should expect changes in duties and hours. (Record Item 3.) Claimant appealed. Her testimony at the November 5, 1997, hearing before the referee is summarized as follows.

Claimant graduated from nursing school in September of 1995. On January 12, 1996, Claimant obtained a part-time position as a staff nurse on the first floor specialty care unit of Employer's nursing home. In April of 1997, she turned down an offer for a full-time position as a house supervisor, because she believed she was not qualified to handle the responsibility the position entailed and because the hours (3 p.m. to 11 p.m.) conflicted with her family's needs. Shortly thereafter, Claimant accepted a part-time position as a house supervisor on the 11 p.m. to 7 a.m. shift. While this position involved additional responsibility, Claimant explained that the facility was much quieter during the night shift, Employer's director of nursing was available if she needed help, and her husband was home during those hours to mind her children. Claimant stated that Employer was aware of her husband's work schedule and had made accommodations for her because of it.

About two weeks later, Claimant accepted a full-time position as unit manager of the second floor, with a schedule of 7 a.m. to 3:30 p.m., Monday through Friday, with weekends and holidays off. At the end of April 1997, Claimant's position was modified to include responsibility for the third floor.

On Thursday, August 7, 1997, Claimant was summoned to the administrator's office and told that her position as a unit manager was being eliminated under Employer's restructuring plan. Claimant was offered an alternate position as a house supervisor, effective the following Monday. The new position would involve responsibility for all five floors of the facility and would require Claimant to work alternate weekends and holidays.

Claimant testified that she told the administrator she did not believe she could handle responsibility for the entire facility. (N.T. 12.) Nevertheless, Claimant did not have the option of keeping her position and, believing she had to give an immediate answer, Claimant agreed to try the job for two weeks. (N.T. 9.)

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Claimant reconsidered the job offer that evening. Claimant was concerned because she had only been a nurse for a year and eight months, and, under the restructuring plan, she would no longer be able to rely on the director of nursing and two other unit managers for support and assistance.[2] (N.T. 9.) Claimant testified that, as unit manager for floors two and three, she had been responsible for supervising two licensed practical nurses (LPN) and six certified nurses' aides (CNA). As house supervisor, Claimant would be responsible for supervising two registered nurses, five LPNs and thirteen CNAs.

Claimant described the first floor of Employer's facility as an acute care setting, with cardiac patients and patients on ventilators, admissions, and transfers. Claimant stated that the second floor involved skilled care, with cardiac patients and "trach" patients, and some admissions. Claimant described the third, fourth and fifth floors of the facility as intermediate care floors. (N.T. 10.)

Claimant testified that if she accepted the position, she believed she could not comply with the standards of nursing conduct set forth at 49 Pa.Code § 21.18. (N.T. 11.) That section provides that a registered nurse shall undertake a specific practice only if she has the necessary knowledge, preparation, experience and competency to properly execute the practice. 49 Pa.Code § 21.18(a). A registered nurse who fails to comply with this prohibition is subject to disciplinary action. 49 Pa.Code § 21.18(c). Claimant concluded that she could lose her nursing license if she accepted a position she was not competent to handle.[3] The following day, Claimant submitted a letter of resignation to the director of nursing, stating that she did not feel that it would be safe for her to assume so much responsibility and that she was concerned about losing her license. (N.T. 12.)

Barbara Compson–Lloyd, Employer's former director of nursing, testified that she was present at the August 7, 1987 meeting with Claimant and the administrator. Lloyd testified that, during the meeting Claimant had stressed her concern about her ability to oversee the staff and monitor the care of 140 to 150 patients. (N.T. 16.) Lloyd believed that Claimant was not yet aware that one unit manager had declined the same position, citing the same concerns, or that the other unit manager had been discharged. (N.T. 17.)

Lloyd stated that no other position was offered to Claimant at that time. Lloyd testified that she believed Claimant's' reservations about her lack of experience and ability to perform the job were reasonable. (N.T. 15.) Lloyd stated that she resigned on August 11, 1987, due to similar concerns about patients' safety and jeopardizing her license. (N.T. 15.)

Employer's representative, Charles Snyder, testified briefly. (N.T. 18–19.) He stated he could not discuss an ongoing review of Employer's facility conducted by the Department of Health and acknowledged that Employer had undertaken a voluntary ban on admissions. Snyder commenced his employment only two days before the hearing and had no information regarding the circumstances surrounding Claimant's resignation.

The referee affirmed the OES' determination, finding that Claimant's concerns were speculative and that Claimant failed to articulate her concerns to Employer prior to terminating her employment. Claimant appealed to the Board, arguing, *inter alia*, that these findings reflect a capricious disregard of competent and unrebutted evidence.

The Board's pertinent Findings of Fact (FOF) are summarized as follows.[4] Claimant was notified that her position of unit manag-

---

**2.** Claimant testified that the two remaining unit managers were no longer employed at the facility. One declined Employer's offer to share the house manager position with Claimant on an alternating schedule. The other, a nurse with twenty-two years' experience, was laid off.

**3.** Claimant also concluded that she would not be able to secure child–care for the weekends, but she does not pursue this issue on appeal.

**4.** The Board is the ultimate fact-finder in unemployment cases and where the Board issues its own findings of fact, we review the findings issued by the Board. *Allen v. Unemployment Compensation Board of Review*, 162 Pa.Cmwlth. 250, 638 A.2d 448 (1994).

er was being eliminated and she was offered a position as a house supervisor, effective the following week. (FOF 5,7.) As a house supervisor, Claimant alone would be responsible for all five floors of Employer's facility four days per week and she would be required to work every other weekend and holidays. (FOF 8–9.) Claimant had concerns that she would not be able to perform the job and concerns for residents' safety. (FOF 14–15.) Claimant tendered a letter of resignation stating that she felt the task was more than she was able to give. (FOF 16.) Claimant did not discuss any of her concerns with Employer before she voluntarily quit her position. (FOF 17.)

The Board stated that Claimant did not provide any details or evidence to support her concerns about patient safety and her ability to perform the job, and concluded that those concerns were merely speculative. The Board also concluded that Claimant did not make a reasonable effort to preserve her employment, in that she did not speak with Employer about any of her concerns before she resigned and did not inform Employer of her reasons for leaving. Accordingly, the Board concluded that Claimant was ineligible for benefits under Section 402(b) of the Law.

On appeal to this Court, Claimant argues that Employer's unilateral changes in Claimant's duties and hours constitute cause of a necessitous and compelling nature to terminate her employment. Claimant contends that her concerns about patient safety and her obligations under 49 Pa.Code § 21.18 also constitute good cause for quitting. Claimant further argues that the Board abused its discretion in finding that Claimant's concerns were speculative and that she did not discuss her concerns with Employer prior to quitting. Claimant argues that no evidence supports these findings, while Claimant's testimony to the contrary was corroborated and unrebutted and there was no adverse finding of credibility.[5]

■ In order to be eligible for benefits, a claimant who voluntarily terminates her employment bears the burden of proving that necessitous and compelling reasons motivated that decision. *Accu–Weather, Inc. v. Unemployment Compensation Board of Review*, 160 Pa.Cmwlth. 307, 634 A.2d 818 (1993). The claimant must establish that: 1) circumstances existed which produced real and substantial pressure to terminate employment; 2) like circumstances would compel a reasonable person to act in the same manner; 3) she acted with ordinary common sense; and 4) she made a reasonable effort to preserve her employment. *Carter v. Unemployment Compensation Board of Review*, 157 Pa.Cmwlth. 133, 629 A.2d 212 (1993). The question of whether a claimant had necessitous and compelling reason to terminate employment is a question of law reviewable by this Court. *Willet v. Unemployment Compensation Board of Review*, 59 Pa.Cmwlth. 500, 429 A.2d 1282 (1981).

■ While an employer may make reasonable modifications in job assignments, a substantial unilateral change in employment conditions renders the job unsuitable. *Broadus v. Unemployment Compensation Board of Review*, 118 Pa.Cmwlth. 196, 544 A.2d 1098 (1988). In *Broadus*, the claimant worked as a personal care assistant, with a full-time supervisor, in a residential facility for mentally handicapped adults. When the supervisor was discharged, the claimant was asked to run the group care home by herself, until a new supervisor was hired. The claimant quit, contending she was asked to do the work of two people, she was unable to provide the necessary quality of care, and she was concerned about the residents' safety. The *Broadus* court reversed the Board's denial of benefits under Section 402(b), concluding that the dramatically increased workload and concern for residents' safety gave rise to

---

5. As previously noted, Employer presented no relevant evidence. Where, as here, the burdened party is the only party to present evidence and does not prevail before the agency, our scope of review is whether the agency erred as a matter of law or capriciously disregarded competent evidence. *Van Duser v. Unemployment Compensa-* *tion Board of Review*, 164 Pa.Cmwlth. 96, 642 A.2d 544 (1994). The Board capriciously disregards evidence when it willfully and deliberately disregards competent evidence which a person of ordinary intelligence could not possibly have avoided in reaching the result. *Id.*

necessitous and compelling reasons for the claimant to leave her employment.

■ Like the claimant in *Broadus*, Claimant here described responsibilities involved on the various floors that were previously handled by three unit managers and that could not be simultaneously handled by one individual. The Board characterized Claimant's concerns about patient safety and her ability to adequately perform the role of house supervisor as merely speculative. We disagree. As a former staff nurse on Employer's acute care floor, Claimant was familiar with the requirements of caring for critically ill patients and with the level of activity (admission and transfers, etc.) associated with that floor. Claimant testified in detail regarding the different levels of care and activity taking place on each floor. She also testified that, as one of three unit managers, she frequently relied on more experienced nurses for assistance. The Board's statement that Claimant failed to provide details supporting her concerns ignores competent evidence of record that Claimant's concerns were not speculative, but were based on her knowledge and experience. Claimant's description of the increased responsibilities the new position entailed, which was not discredited by the Board, establishes that the new position constituted a substantial and unilateral change in her employment situation.

■ In addition, where an employee has a reasonable belief that her professional integrity is jeopardized by the circumstances of her employment, there can be necessitous and compelling cause to terminate employment. *Tom Tobin v. Unemployment Compensation Board of Review*, 144 Pa.Cmwlth.

44, 600 A.2d 680 (1991). Here, Claimant's burden required her to prove the reasonableness of her actions and that she made a reasonable effort to maintain her employment. Claimant established that she is legally bound not to undertake responsibility for which she is not qualified or trained. *Cf. Miller v. Unemployment Compensation Board of Review*, 73 Pa.Cmwlth. 438, 458 A.2d 334 (1983) (claimant's contention that she was forced to breach her professional responsibility was not supported by evidence of any statute, regulation, or code of ethics which would be violated). Claimant's testimony, combined with the testimony of Lloyd, Employer's former director of nursing, is sufficient to establish that Claimant's concerns and actions were reasonable. Lloyd also corroborated Claimant's testimony that these concerns were expressed to Employer at the August 7, 1997 meeting, prior to her resignation.

The Board did not reject or even acknowledge Claimant's evidence with respect to these issues, despite argument in Claimant's brief to the Board quoting Lloyd's testimony and contending that the witnesses' testimony established the facts necessary to meet Claimant's burden of proof and was capriciously disregarded by the referee.[6] Instead, the Board issued a contrary finding which is not supported by the record.[7] *See Odgers v. Unemployment Compensation Board of Review*, 89 Pa.Cmwlth. 439, 492 A.2d 808 (1985), *aff'd*, 514 Pa. 378, 525 A.2d 359 (1987). While the Board is free to reject even uncontradicted testimony, as the finder of fact, the Board has the responsibility to determine the weight to be given evidence and the credibility to be afforded witnesses. *Borello v. Un-*

---

6. In its brief to this Court, the Board does acknowledge Lloyd's testimony, but maintains that the Board has the power to "resolve this contradiction in testimony" against Claimant, citing *Vitelli v. Workmen's Compensation Appeal Board (St. Johnsbury Trucking Co.)*, 157 Pa.Cmwlth. 589, 630 A.2d 923 (1993), *petition for allowance of appeal denied*, 537 Pa. 627, 641 A.2d 591 (1994). (Board's brief, p. 6.) In this case, however, no conflicting testimony was presented. Curiously, the Board cites Claimant's testimony on pp. 10, 12, and 14 as evidence she did not express her concerns prior to quitting. That testimony includes the following exchange:

R: Did you tell the administrator that you felt uncomfortable because of your lack of experience?
C: Yes, I did.
R: ... What did you say to her?
C: ... I feel that they need someone else. I don't really feel that I could handle the whole house.
(N.T. 12.)

7. Accordingly, even if we were to apply the substantial evidence scope of review, our result would not differ, as the Board's necessary finding that Claimant failed to express her concerns prior to quitting is not supported by the record.

*employment Compensation Board of Review*, 490 Pa. 607, 417 A.2d 205 (1980). The Board's opinion reflects that relevant, competent, and unrebutted evidence was not considered.

Accordingly, we reverse.

### ORDER

NOW, July 9, 1998, the order of the Unemployment Compensation Board of Review, at No. B–366628, dated December 23, 1997, is reversed.

LEADBETTER, J., dissents.