# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carlos A. Cartagena, Jr.,                    :
                    Petitioner        :
                                      :
       v.                                          :    No. 1207 C.D. 2016
                                        :    Submitted: February 17, 2017
Unemployment Compensation                    :
Board of Review,                             :
                 Respondent       :

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**               **FILED: May 18, 2017**

Petitioner Carlos A. Cartagena, Jr. (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board), dated May 25, 2016. The Board affirmed the Unemployment Compensation Referee's decision, which denied Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's "unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 661 (Pa. Cmwlth. 2006). A claimant who voluntarily quits his employment "bears the burden of proving that necessitous and compelling reasons motivated that

**(Footnote continued on next page…)**

voluntary separation without cause of a necessitous and compelling nature. The Board also found that Claimant had fault overpayments of $1,689, which are subject to recoupment pursuant to Section 804(a) of the Law.[2] We now affirm the Board's order.

Claimant was employed as a Database Administrator and Program Evaluator for Public Health Management Corporation (Employer).[3] The Erie Unemployment Compensation Service Center (Service Center) issued a Notice of Determination, finding Claimant ineligible for benefits under Section 402(b) of the Law. (Certified Record (C.R.), Item No. 6.) The Service Center first determined that Claimant failed to meet his burden to prove a necessitous and compelling reason for quitting. (*Id.*) Claimant appealed the Service Center's determination.

A Referee conducted an evidentiary hearing, at which Claimant testified on his own behalf, and Employer introduced the testimony of Janese Brown-Hooker, Employer's Human Resources Business Partner (HR Representative), and Sara Kinsman, Employer's Director of Maternal Child Family Health and Claimant's supervisor (Claimant's Supervisor).

Employer's HR Representative testified that she believed that Claimant quit. She explained that in late September or early October 2015,

---

**(continued…)**

decision." *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999).

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 874(a).

[3] Employer is part of the Philadelphia Department of Public Health. (C.R., Item No. 13 at 1-2.)

Claimant came to her and stated that he was unhappy with his job and had some concerns. (C.R., Item No. 13 at 5.) She offered to meet with him to try to remedy his concerns through mediation or other ways, but Claimant declined to do so. (*Id.*) She testified that Claimant requested a severance agreement. (*Id.*) She and Claimant's Supervisor met with Claimant, and he proposed a severance under which he would receive three months of salary and benefits. (*Id.* at 5-6.) After discussing with Employer and Employer's attorney, the HR Representative and Claimant's Supervisor offered Claimant a severance proposal on December 14, 2015, under which Employer would pay Claimant four weeks of pay, two weeks of notification pay, for a total of six weeks of pay. (*Id.* at 6.) Employer's HR Representative testified:

> At that time, he said he thought he was fine with the agreement, he left, and [Claimant and the HR Representative] communicated back and forth. He had some concerns with the agreement, and, he was supposed to sign the agreement on January 11th and on that day he requested six months' pay and benefits, which we did not offer him.

(*Id.*) The HR Representative further testified that Claimant refused to sign the agreement and that was one of the last conversations she had with him in regards to the agreement. (*Id.*) She emailed him later and asked him to decline the agreement, but she did not hear back from him until February, when he received a portion of the pay that he needed to be paid out. (*Id.*) At that time all he asked was whether the check was accurate or "[w]as this done as a mistake." (*Id.*) She informed him that it "was the money that was owed to [him] when [Employer was] paying it to [him]." (*Id.*) That was the last time that she spoke with him. (*Id.*)

The HR Representative testified that if there had been no issue of severance, Claimant could have continued his employment. (*Id.* at 6-7.) She

3

explained that Employer even offered him additional work when she and Claimant's Supervisor met with him. (*Id.* at 7.) He declined the work and said he "just wanted a severance agreement." (*Id.*) He declined everything they offered him. (*Id.*) He never returned to work after the deadline was exhausted. (*Id.*) The HR Representative further testified that Employer was willing to investigate Claimant's concerns and even engage in mediation. (*Id.*)

On cross-examination, the HR Representative explained:

The day we met on the 14th [of] December, [Claimant] said he was going to sign the agreement. He just had three questions on that day. I told him it was okay for him to leave that day, and we would get the documentation back to him. And, that was the day he left.

(*Id.* at 8.) The HR Representative further testified that Employer did not suspend or terminate his employment, and Claimant did not ask if he was being suspended or terminated. (*Id.*) The HR Representative disagreed with Claimant's recollection that he was asked to leave pending preparation of another version of the agreement. She further explained:

[M]y understanding is that you were leaving contingent upon you signing an agreement, which you requested because you were unhappy and did not want us to do anything else but give you a severance agreement. You received that second severance agreement on January 4th. When you received it on the 4th, you said you needed additional time, which we gave you, which was an additional seven days, which put us at January 11th. On the 11th . . . you emailed me and said you would only sign the agreement—and I have that email if you would like to see it. You would only sign the agreement if we offered you six months' severance pay as well as six months benefits.

(*Id.*)

4

When asked whether Claimant told the HR Representative that he wanted the severance agreement because of a hostile work environment, a complaint he had previously raised with Employer, the HR Representative testified that he had not. Rather, he told her he wanted the severance agreement because "he was unhappy in the environment he was working in; he was not receiving any work." (*Id.* at 9.) She remembers Claimant telling her that the issues he had been dealing with prior to her involvement, presumably allegations of a hostile work environment, had been resolved. (*Id.*) The HR Representative spoke with Claimant's Supervisor, who was unaware of the situation, and Claimant's Supervisor offered Claimant more projects.[4] (*Id.*)

Claimant testified that he did not quit his job. (*Id.* at 10.) Rather, Claimant testified that on December 14, 2015, the HR Representative terminated his employment. (*Id.*) Claimant testified that he met with the HR Representative and Claimant's Supervisor and discussed a draft of Claimant's severance agreement. (C.R., Item No. 13 at 10.) They "came to an agreement that a severance would be typed up" and another draft given to him. (*Id.*) He stated that following this discussion, the HR Representative told him to leave. (*Id.* at 10-11.) He did not inquire further because he was just waiting for the final version of the agreement. (*Id.* at 11.) He did not inform her that he did not want to leave or inform her that he wished to work until the agreement was finalized, because he did not want to escalate the situation. (*Id.* at 11-12.) When asked whether the HR Representative told him that his employment was terminated, he responded: "She

---

[4] Claimant's Supervisor testified that she agreed with the HR Representative's testimony. (C.R., Item No. 13 at 10.)

didn't—she wasn't clear about being terminated . . . . I just interpreted it as just leaving and not coming back." (*Id.* at 13.) He stated that if he was not told to go home, he would have continued to work until a separation agreement was signed. (*Id.*) He agreed, however, that prior to coming to the HR Representative with a request for a severance package he could have continued to work. (*Id.*) He acknowledged that there was a date by which he was to sign the revised agreement, but he said there were still some things in the revised agreement with which he did not agree, so he did not sign the agreement. (*Id.*)

On rebuttal, the HR Representative testified that "when we gave him the first agreement that he had concerns with, I distinctly remember saying to him if you want to leave you can leave and we'll get back to you about this. So it was his decision on December 14th to leave." (*Id.* at 14)

Following the hearing, the Referee issued a decision and order, affirming the Service Center's determination. (C.R., Item No. 10.) The Referee made the following findings of fact:

1. The claimant began employment as a Database Administrator/Program Evaluator with Public Health Management Corporation on January 20, 2014. The claimant's last actual day at work was December 14, 2015 and his rate of pay was approximately $56,500 per year.

2. In late September or early October 2015 the claimant met with a Human Resources Business Partner.

3. At the meeting the claimant told the HR Representative that he was not happy with his job.

4. The HR Representative asked the claimant if he wanted her to investigate whether the employer could make accommodations in the claimant's job duties which would make the claimant want to continue in this employment.

6

5. The claimant told the HR Representative that he did not want her to investigate any accommodations and that all he wanted was for the employer to grant him a severance agreement in order for him to leave this employment.

6. The employer granted the claimant a severance agreement and December 14, 2015 was his last day at work.

7. In a letter mailed to the claimant on January 4, 2016 the employer characterized the claimant's December 14, 2015 separation from employment as a "Termination."

8. The claimant was not terminated from this employment, but instead voluntarily quit when continuing work was available for him.

9. When filing his claim for Unemployment Compensation benefits the claimant misled and misinformed the UC Service Center by informing that office that he was separated from this employment due to a lack of work.

(*Id.*) The Referee determined that Claimant voluntarily terminated his employment and failed to show cause of a necessitous and compelling nature for doing so. (*Id.*) The Referee disagreed with Claimant's characterization of his separation, observing that Claimant initiated the separation because he was no longer happy with this job. The Referee also noted that Claimant refused "to allow the HR Representative to investigate whether or not there were modifications which would have made the claimant's job more attractive to him and allow him to continue in his job." (*Id.*) The Referee explained that Claimant "incredibly testified that he was discharged" because Claimant "initiated his separation from employment" and "insisted that all he wanted was a severance agreement in order to leave this employment." (*Id.*)

7

Claimant appealed to the Board, which affirmed the Referee's decision and order. (C.R., Item No. 12.) In so doing, the Board adopted and incorporated the Referee's findings of fact and conclusions of law. Claimant now petitions this Court for review of the Board's order.

On appeal,[5] Claimant appears to contest the Board's decision in two ways. First, Claimant essentially argues that the Board committed an error of law when it analyzed his claim under Section 402(b) of the Law, relating to voluntary termination of employment without cause of a necessitous and compelling nature, because it should have analyzed the matter under Section 402(e) of the Law,[6] relating to discharge for willful misconduct. Alternatively, he appears to argue that the Board erred in concluding that he did not have a necessitous and compelling reason for his voluntary resignation.

We first address Claimant's argument that the Board committed an error of law when it analyzed his claim under Section 402(b) of the Law, relating to voluntary termination of employment without cause of a necessitous and compelling nature, because it should have analyzed the matter under Section 402(e) of the Law, relating to discharge for willful misconduct. Claimant contends that he did not resign.

---

[5] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[6] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

At the outset of the hearing, the Referee noted that there appeared to be a disagreement as to whether Claimant quit or whether Employer discharged Claimant from his employment.[7]  (C.R., Item No. 13 at 3-4.)  The Referee explained the differing burdens of proof under Sections 402(b) and 402(e) of the Law and asked the parties whether they objected to the Referee considering both sections.[8]  Employer did not object, but Claimant objected to the Referee considering both sections.  (*Id.* at 4.)

Given the limited scope of the matter before the Referee, the Referee considered Claimant's testimony regarding his separation from employment with Employer.  The Referee discredited Claimant's characterization of the separation.  Although the Referee acknowledged that Employer's letter to Claimant, dated

---

[7] The notice of hearing provided that one of the specific issues to be considered was "[w]hether [C]laimant's unemployment was due to voluntarily leaving work without cause of a necessitous and compelling nature." (C.R., Item No. 12.)  The notice also provided that other issues may be considered, including "[w]hether [C]laimant's unemployment was due to discharge or temporary suspension from work for willful misconduct connected with employment." (*Id.*)

[8] Generally, whether a Claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to this Court's review and must be determined from a totality of the facts surrounding the cessation of employment.  *Key v. Unemployment Comp. Bd. of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996).  "It is a claimant's burden to prove that his separation from employment was a discharge."  *Id.*  If a claimant proves that he was discharged, then the burden to prove that the claimant was discharged for willful misconduct is on the employer.  *Id.* at 412-13.  If a claimant fails to prove that he was discharged, then the claimant has the burden to prove necessitous and compelling reasons for quitting.  *See Empire Intimates v. Unemployment Comp. Bd. of Review*, 655 A.2d 662, 664 (Pa. Cmwlth. 1995).  A finding of voluntary termination is essentially precluded unless the claimant has a conscious intention to leave his employment.  *Spadaro v. Unemployment Comp. Bd. of Review*, 850 A.2d 855, 859 (Pa. Cmwlth. 2004).  On the other hand, to be interpreted as a discharge, the employer's language must possess the immediacy and finality of a firing.  *Charles v. Unemployment Comp. Bd. of Review*, 552 A.2d 727, 729 (Pa. Cmwlth. 1989).

9

January 4, 2016, referred to Claimant's separation from employment on December 14, 2016, as a "termination," the Referee found that Employer did not terminate Claimant's employment. Instead, the Referee found that Claimant voluntarily quit when continuing work was available to him. In making this finding, it appears that the Board relied upon the testimony of the HR Representative, who testified that she informed Claimant "if you want to leave you can leave and we'll get back to you about this. . . . [I]t was his decision on December 14th to leave." (*Id.* at 14.) She further testified that Claimant could have continued his employment, and he never returned to work after the deadline for accepting the severance proposal passed. (*Id.* at 6-7.) Based upon these circumstances, we discern no error on the part of the Referee or Board in analyzing this matter under Section 402(b).[9]

Next, we address Claimant's alternative argument that the Board erred in concluding that he did not have a cause of a necessitous and compelling nature for his voluntary resignation. To establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with

---

[9] Had the Referee and Board considered this matter under Section 402(e) of the Law, the outcome would remain the same. The HR Representative's testimony, which the Referee and Board appear to have found credible, also supports a determination that Employer did not terminate Claimant's employment on December 14, 2015, because Employer did not use language that possessed the immediacy and finality of a firing. *See Charles*, 552 A.2d at 729. Claimant even testified that the HR Representative "wasn't clear about being terminated….I just interpreted it as leaving and not coming back." (C.R., Item No. 13 at 13.) Moreover, we note that Claimant's actions on that day were consistent with his earlier expressed desire to arrive at a severance agreement so that he could resign his employment.

ordinary common sense, and (4) the claimant made a reasonable effort to preserve his employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008).

Claimant appears to argue in his brief to this Court that he had necessitous and compelling reasons to resign his employment, because the workplace constituted a hostile work environment and he had a sick child. Claimant, however, did not raise these issues before the Referee nor did he present any evidence in support. Claimant, therefore, has not preserved these issues for review. *See Dehus v. Unemployment Comp. Bd. of Review*, 545 A.2d 434, 436 (Pa. Cmwlth. 1988) (holding that claimant waives review of issue by failing to raise it before referee when he had opportunity to do so).

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

Judge Cosgrove concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carlos A. Cartagena, Jr.,  :
     Petitioner :
        :
   v.     : No. 1207 C.D. 2016
        :
Unemployment Compensation :
Board of Review,   :
     Respondent :

## **O R D E R**

AND NOW, this 18th day of May, 2017, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

         _____
         P. KEVIN BROBSON, Judge