# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Teena M. Parrillo,          :
                             :
            Petitioner          :
                             :
            v.                 : No. 268 C.D. 2016
                             : Submitted: July 14, 2017
Unemployment Compensation     :
Board of Review,                :
                             :
            Respondent       :

BEFORE:     HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE JULIA K. HEARTHWAY, Judge[1]
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                      **FILED: September 12, 2017**

Teena M. Parrillo (Claimant), *pro se*, petitions for review of the order of the Unemployment Compensation Board of Review (Board), holding that she is ineligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law[2] (Law) because she voluntarily quit her job without a necessitous and compelling reason. We affirm.

---

[1] This decision was reached before Judge Hearthway's service with the Court ended on September 1, 2017.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, § 402(b), *as amended*, 43 P.S. § 802(b). Section 402(b) provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week … [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature …." 43 P.S. § 802(b).

Claimant was employed by the Law Office of Mark Zlock, PC (Employer) in a full-time position as Legal Secretary and Office Manager, from August 3, 2012 until June 17, 2015. (Record Item (R. Item) 10, Referee's Decision, Finding of Fact (F.F.) ¶1.) The additional facts found by the Referee and adopted by the Board concerning Claimant's separation from that employment are as follows:

> 2. At the time of separation, [C]laimant was working remotely for [E]mployer from her residence in Florida.
>
> 3. On June 17, 2015, [E]mployer became concerned about apparent irregularities in his communication system including computer, electronic mail and telephones.
>
> 4. [E]mployer consulted a technician who advised him to remove everyone from the system until the problem could be identified and addressed.
>
> 5. During the course of this employment, [E]mployer communicated with [C]laimant by sending texts to her personal cellular telephone, although [E]mployer had provided [C]laimant with a business telephone.
>
> 6. On June 17, 2015, [E]mployer texted [Claimant] on her personal telephone and asked for passwords of various systems.
>
> 7. On the same date [E]mployer advised [C]laimant to refrain from accessing any of [E]mployer's equipment.
>
> 8. [E]mployer did not state to [C]laimant that she was fired or use any other language indicating termination of employment.
>
> 9. [C]laimant texted [E]mployer on June 17, 2015 and asked if he had intended to send her the instruction to stay off the systems.
>
> 10. [E]mployer did not immediately respond to [C]laimant's questions.

2

11. Over the next two days, [E]mployer continued to send texts to [C]laimant on her personal telephone requesting information regarding work issues.

12. [C]laimant advised [E]mployer by a text message sent on June 21, 2015, that she interpreted his June 17, 2015 email message to stay off the communication systems as a firing.

13. [C]laimant voluntarily left this employment.

(R. Item 10, Referee's Decision, F.F. ¶¶2-13; R. Item 13, Board's Order.)

Claimant applied for unemployment compensation benefits on July 3, 2015, stating that she had been discharged from her employment. (R. Item 2, Internet Initial Claims Form.) She stated further that, with the permission of Employer, she had had complete control of Employer's business, gaining access to the computer remotely, and that she had changed the computer password and neglected to inform Employer quickly enough and he "flipped out basically." (*Id.*) Claimant stated that she sent Employer the password but that he responded with a text indicating that she was not to access the computer system, and he then failed to respond to her texts inquiring why she was being denied permission to access the computer. (*Id.*)

Employer disputed Claimant's account, stating that it was the belief that his computer was being accessed by someone outside the business that prompted him to text Claimant on June 17, 2015 with instructions not to access the computer; he indicated that he did not hear from Claimant again after that evening until June 21, 2015, when Claimant emailed him that she interpreted his instructions to mean that she had been fired. (R. Item 4, Records of Oral Interviews.) Claimant's June 21, 2015 email to Employer reads, in part,

> As per your instructions in two text messages to me on June 17, 2015 at 9:10 p.m. that I am NOT allowed to access any of your personal and business related accounts

3

including but not limited to the business computer, emails, bank, phone, medical, etc…., I immediately ceased all work on your business, boxed up your items and turned off the cell phone that was connected to the office number of 215-579-2215. Since my accessing these items including the computer and the phone is my daily job, I took this as being fired since you failed to provide any other explanation of your decision.

(Claimant's Exhibit C-1.)

On July 27, 2015, the Department of Labor and Industry's Office of Unemployment Compensation Benefits issued a determination that Claimant was not ineligible for benefits; the Department considered Claimant's eligibility under both Section 402(b) and Section 402(e)[3] of the Law, and concluded that Claimant did not quit her employment but rather that Employer initiated the separation, and Employer failed to prove that he had done so as a result of Claimant's willful misconduct. (R. Item 5, Notice of Determination.) Employer appealed, and the Referee conducted a hearing on October 27, 2015, at which both Claimant and Employer appeared and testified by telephone, and Employer presented the testimony by telephone of a witness, Judy Sherman. (R. Item 9, Referee's Hearing Transcript (H.T.) at 1-34.)

On October 30, 2015, the Referee issued a decision reversing the determination of the Office of Unemployment Compensation Benefits. The Referee determined that the hearing testimony established that Claimant voluntarily left her employment; ruling under Section 402(b) of the Law, the

---

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, § 402(e), *as amended,* 43 P.S. § 802(e). Section 402(e) provides that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ." 43 P.S. § 802(e).

Referee found Claimant ineligible for benefits because she had voluntarily left her employment without cause of a necessitous and compelling nature. The Referee stated:

> In this case, [C]laimant testified that [E]mployer fired her by instructing her not to access any of the [E]mployer's computer system on June 17, 2015. The [R]eferee does not find [C]laimant's testimony credible and resolves all conflicts in favor of [E]mployer. [E]mployer testified that he instructed [C]laimant not to access his communication systems and continued to ask her questions about work on June 18 and June 19, 2015, indicating to her that he had not fired her. [R]eferee finds [E]mployer's testimony credible.

(R. Item 10, Referee's Decision, Reasoning.)

Claimant appealed the Referee's decision to the Board. On December 22, 2015, the Board issued an order adopting and incorporating the Referee's findings and conclusions and affirming her decision. (R. Item 13, Board Order.) Claimant then filed the instant petition for review appealing the Board's order to this Court.[4]

Before this Court, Claimant contends that she was "constructively discharged for unknown reasons;" she asserts that Employer has provided inconsistent accounts of the events that transpired on the date she left her employment and that the documentary evidence he produced just days prior to the hearing both prejudiced her and confused her, rendering her not credible in the

---

[4] Our review of the Board's order is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 297 n.6 (Pa. Cmwlth. 2013).

5

eyes of the Referee. (Claimant's Brief at 12, 14-16.) Claimant objects specifically to the inclusion in the record of text messages between Employer and his girlfriend, Ms. Sherman, which she deems not authentic.

The question of whether a claimant has voluntarily quit her employment or whether she was discharged is a question of law for this Court to determine, based on the totality of the record. *Bell v. Unemployment Compensation Board of Review*, 921 A.2d 23, 26 (Pa. Cmwlth. 2007). A claimant voluntarily terminates her employment if she leaves, resigns, or quits employment "without action by the employer." *Fishel v. Unemployment Compensation Board of Review*, 674 A.2d 770, 772 (Pa. Cmwlth. 1996) (*en banc*). "To be interpreted as a discharge, an employer's language must possess the immediacy and finality of firing." *Id*. Here, Claimant acknowledged that the text message she received from Employer on June 17, 2015 instructing her not to access any business accounts said nothing about her being fired or instructing her not to return to work the next day. (R. Item 9, H.T. at 19.) Claimant testified that when she received the aforementioned text, she responded with a return text to Employer asking him whether he understood that he had texted that message to her, and asking him what was happening, but Employer did not immediately respond. (*Id*.) Claimant testified that after she received the text, she:

> [S]hut everything down…So to suddenly receive that and
> be told that you are now not allowed to access anything,
> including the phone which would have nothing to do
> again with the computer issue, I can't do my job. My job
> is done. If I can't do that stuff, I can't do my job.

(*Id*., H.T. at 20.) Claimant did not introduce any text messages or other documentary evidence that she asked Employer whether she was discharged.

6

Other than her interpretation of Employer's text message to mean that she had been fired, Claimant offered no evidence to support her assertion that her employment had been terminated.

We find no merit in Claimant's argument that she was disadvantaged by the continuances granted Employer, and the additional time period he was therefore allowed during which he could submit evidence. The record includes the original notice of hearing scheduled for September 3, 2015, together with subsequent hearing notices issued for hearings on September 15, 2015 and October 13, 2015, all of which were continued. Claimant asserts that Employer should not have been permitted to submit evidence after the initial deadline established prior to the initially scheduled hearing. Five days prior to the hearing, Employer submitted a series of text messages, most between Claimant and Employer, and several between Employer and Ms. Sherman, Employer's witness. We find there was no prejudice to Claimant from the introduction of these texts. The texts between Employer and Ms. Sherman serve only to corroborate Employer's testimony that he was unaware of why Claimant was not responding to his messages on July 18, 2015 and July 20, 2015. At the hearing, Claimant acknowledged having received text messages from Employer on her personal phone on June 18, 2015 and again on June 20, 2015, regarding work-related issues; she stated, however, that there was no point in responding to these messages given the fact that she was not permitted to do anything. (R. Item 9, H.T. at 22- 23.) Claimant was thus not prejudiced by the fact that Employer offered portions of these texts as evidence at the hearing. The remainder of the text messages between Claimant and Employer documented work conversations that occurred prior to the incident on June 17, 2015, and were not at all relevant to the matters considered by

7

Referee, nor were there findings made with regard to any information contained in these texts. Each of the hearing notices advising the parties of the rescheduled hearing dates included the instruction that documents to be entered into the record at the hearing must be submitted to the Referee Office at least five days before the hearing, so Employer was permitted to offer this evidence, and did so five days prior to the hearing.

Claimant also asserts that Employer told inconsistent stories throughout the proceedings, and should not therefore have been found credible. First, it is axiomatic that the Board is the ultimate finder of fact and final arbiter of credibility, and we are bound by its credibility determination. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. 1985). Second, the record reveals that Employer gave a consistent account of events that transpired, beginning with his response to the Erie Unemployment Compensation Service Center and ending with his testimony before the Referee. Accordingly, we find this assertion to be without merit.

Here, the Board found that Claimant voluntarily left her employment, and under Section 402(b) of the Law, a person shall be ineligible for unemployment compensation benefits when the unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. 43 P.S. § 802(b). It was therefore Claimant's burden to demonstrate a necessary and compelling reason for leaving her employment, *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013); *Green Tree School v. Unemployment Compensation Board of Review*, 982 A.2d 573, 577 (Pa.

Cmwlth. 2009); *Fitzgerald v. Unemployment Compensation Board of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), and she failed to do so.[5]

The Referee found that Claimant's testimony was not credible, and resolved all conflicts in favor of Employer. Employer testified that he did not fire Claimant on June 17, 2015, but rather instructed her not to access his communications systems and continued to ask her work-related questions on the following days, indicating to her that he had not fired her. The Board affirmed the decision of the Referee, and we are bound by its credibility determination.

Accordingly, the Board's Order is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

---

[5] Claimant was required to show circumstances that produced real and substantial pressure to terminate employment and would compel a reasonable person to act in the same manner, and that she acted with ordinary common sense in quitting her job and made a reasonable effort to preserve her employment. *Mathis*, 64 A.3d at 299-300; *Craighead-Jenkins v. Unemployment Compensation Board of Review*, 796 A.2d 1031, 1033 & n.3 (Pa. Cmwlth. 2002); *Fitzgerald*, 714 A.2d at 1129.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Teena M. Parrillo,           :
                                      :

           Petitioner        :
                                      :

             v.              : No. 268 C.D. 2016
                                      :

Unemployment Compensation    :
Board of Review,                   :

                                      :
           Respondent      :

# **O R D E R**

AND NOW, this 12th day of September, 2017, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge