IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene Albert Snyder, Jr.,     :
                                   :
                Petitioner   :
                                   :
           v.                 :  No. 737 C.D. 2017
                                   :  Submitted:  November 13, 2017
Unemployment Compensation   :
Board of Review,              :
                                   :
             Respondent   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge (P)
                HONORABLE JAMES GARDNER COLINS, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                       FILED:  February 8, 2018

Eugene Albert Snyder, Jr. (Claimant) petitions for review of the May 12, 2017 order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's decision and held that Claimant is ineligible for unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1]  We affirm.

Claimant worked for Titusville Area Hospital (Employer) as an orthopedic physician assistant from February 28, 2016, through November 30, 2016.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).  Section 402(b) provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his voluntarily leaving work without cause of a necessitous and compelling nature.

On August 25, 2016, Lee Clinton, Employer's chief executive officer, met with Claimant and informed him that his services for the collaborating orthopedic physician were not generating enough revenue to support his full-time position at the hospital. Clinton offered Claimant two additional duties – supervision of cardiac stress tests or serving as a primary care physician assistant – that, when coupled with his existing orthopedic duties, would allow Employer to retain Claimant's services. On December 1, 2016, Clinton and Marybeth Reszkowski, Employer's human resources manager, met with Claimant and advised him that because he declined the offers for additional duties, Employer could not retain his services and his position was eliminated. Findings of Fact (F.F.) Nos. 1-4; 11.

Claimant filed a claim for benefits and the local service center granted benefits. Employer appealed. A referee held a hearing on February 7, 2017. Claimant appeared and Reszkowski and Clinton testified on behalf of Employer.

Claimant testified that he understood the August 25th conversation with Clinton to be an open-ended discussion about ways to increase his productivity because, at its current level, it did not support his salary. He stated that he told Clinton at the time that his preference would be to stay in orthopedics and that if there was a way to increase his productivity in that role that it would be in Claimant's best interest to maintain his orthopedic skills. Claimant testified that the conversation ended there and that he had no further discussion with Clinton. Claimant asserted that Clinton never informed him that his job would be in jeopardy if he did not accept the new duties. Notes of Testimony (N.T.) at 4.

Clinton testified that at the August 25, 2016 meeting, he offered Claimant two additional duties because he hoped to maintain Claimant's full-time employment. Clinton stated that Claimant was not interested in taking on the

2

additional duties and expressed his desire to remain a full-time orthopedic physician assistant. Clinton said that he instructed Claimant to bring him alternative ideas for generating additional revenue, but three months passed without any further discussions. During his testimony, Clinton presented two documents of the annualized net revenue and work Relative Value Unit (RVU) production for both Claimant and his collaborating physician, which showed that Claimant was working at a level below the 25th percentile of all orthopedic physician assistants according to the Medical Group Management Association (MGMA). Clinton explained that this indicated that there was not enough production to justify Claimant's employment and said that he showed Claimant these documents during their discussion on August 25, 2016. N.T. at 5-7; Employer Exhibit 1.

Clinton also stated that Claimant never asked if the additional duties were still available during the December 1st meeting. He testified that a few weeks after Claimant was informed that his position had been eliminated, Claimant called and expressed a willingness to perform the additional duties if Employer would reinstate him. Clinton stated that he declined to reinstate Claimant at that time. N.T. at 7-8.

Reszkowski testified that she and Clinton met with Claimant on December 1, 2016, and presented him with a letter indicating that because the revenue generated by his position was insufficient to support the cost, his position was being eliminated. She further stated that during the discussion, they pointed out to Claimant that he would have been provided with any training necessary to perform the additional duties previously offered. Reszkowski testified that the additional duties offered would have allowed Claimant to work the same schedule for the same salary and benefits. She stated that Claimant declined these duties based on them

3

being outside his orthopedic expertise, but offered no alternative options to increase revenue while he continued to serve in a strictly orthopedic capacity. N.T. at 5.

The referee found that Clinton made it clear to Claimant that there was no full-time orthopedic physician assistant position available and that Claimant would have the same schedule, pay, and benefits if he accepted one of the additional duty options offered. The referee further found that Employer offered Claimant training to ensure that he would feel comfortable performing cardiac stress tests. The referee also found that Claimant declined both additional duty options, which prevented Employer from retaining his services. F.F. Nos. 5-11.

The referee first concluded that Claimant's rejection of reasonable work amounted to voluntary separation. The referee also found that Claimant failed to act with ordinary common sense or make a good faith effort to preserve his employment. Thus, the referee determined that Claimant failed to establish a necessitous and compelling reason for leaving his employment and was ineligible for unemployment benefits under Section 402(b).

On appeal, the Board determined that Claimant was ineligible for unemployment benefits under Section 402(b), adopting and incorporating the referee's findings and conclusions. Claimant now appeals to this Court.[2]

Claimant first asserts that the Board erred in analyzing his eligibility for benefits under Section 402(b), instead of Section 402(e) of the Law.[3] Claimant

---

[2] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Kirkwood v. Unemployment Compensation Board of Review*, 525 A.2d 841, 843-44 (Pa. Cmwlth. 1987).

[3] 43 P.S. §802(e). Section 402(e) provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work.

4

asserts that the August 25th conversation with Clinton concluded on an open-ended note. He argues that while Clinton offered him several options to increase his productivity and asked him to bring back any new ideas for increasing his productivity, Clinton never informed him that a failure to modify his job would jeopardize his employment. According to Claimant, he continued to work for several months until he was abruptly told that his position was eliminated. Claimant maintains that he did not voluntarily separate from employment but was terminated by Employer.[4] Consequently, Claimant argues that the Board should have determined whether he was discharged for willful misconduct and that his failure to immediately accept the proposed modification to his work duties did not amount to an act of willful misconduct.[5]

Whether a claimant's separation from employment is a voluntary termination or a discharge is a question of law fully reviewable by this Court. *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 224 (Pa. Cmwlth. 2012). "It is a claimant's burden to prove that his separation

---

[4] Claimant relies on *Nolan v. Unemployment Compensation Board of Review*, 797 A.2d 1042, 1045 (Pa. Cmwlth. 2002), in which we explained:

> An employee who resigns, leaves, or quits employment without action by the employer has voluntarily terminated his employment. Conversely, it is well-settled that an employer's use of language will be interpreted as a discharge when it possesses the immediacy and finality of a firing, even if specific words such as "fired" or "discharged" are not used. (Citations omitted).

[5] "Willful misconduct has been defined as: (1) a wanton and willful disregard of the employer's interests; (2) a deliberate violation of the employer's rules; (3) a disregard of the standards of behavior that an employer rightfully can expect from its employees; or (4) negligence that manifests culpability, wrongful intent, or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations." *Adams v. Unemployment Compensation Board of Review,* 56 A.3d 76, 78 (Pa. Cmwlth. 2012).

from employment was a discharge." *Key v. Unemployment Compensation Board of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996). If a claimant proves he was discharged, then the burden to prove that the discharge was the result of willful misconduct falls to the employer. *Id.* at 412-13. However, "[w]hen a claimant's conduct is not consistent with a desire to remain employed, we have held in the past that he has, in effect, voluntarily left his employment." *Check v. Unemployment Compensation Board of Review*, 423 A.2d 1140, 1141 (Pa. Cmwlth. 1981). "Claimants who, *while employed*, refuse to accept an offer of *continued* employment are deemed to have quit their position, and are thus subject to Section 402(b)." *Hospital Service Association of Northeastern Pennsylvania v. Unemployment Compensation Board of Review*, 476 A.2d 516, 518 (Pa. Cmwlth. 1984) (emphasis in original).

Here, the Board found that Clinton expressly informed Claimant in their August 25th conversation that Claimant's position was no longer available without modification to his duties to increase productivity; in essence, that a full-time orthopedic physician assistant position was unsustainable. The Board credited Clinton's testimony that he explained this circumstance to Claimant in their August 25, 2016 conversation. Claimant admitted that he did not accept either of the duty modifications offered. The Board also credited Clinton's testimony that he requested that Claimant come to him with ideas for ways to increase productivity that would allow him to remain a full-time orthopedic physician assistant, and that Claimant failed to do so. Because Claimant did not take any action necessary to continue his employment, we agree that his separation from employment was

voluntary and the Board did not err in analyzing Claimant's eligibility under Section 402(b) of the Law.[6]

Alternatively, Claimant argues that if this Court finds that he voluntarily terminated his employment, he had a necessitous and compelling reason for the separation. Claimant asserts that Employer's request that he perform duties outside his orthopedic training made him uncomfortable and he worried about his ability to comply with the required standards of conduct for services outside his expertise, particularly in a field where the safety of patients is involved.

In order to be eligible for benefits, a claimant who voluntarily terminates his employment bears the burden of proving that necessitous and compelling reasons motivated the decision. *Accu-Weather, Inc. v. Unemployment Compensation Board of Review*, 634 A.2d 818, 820 (Pa. Cmwlth. 1993). Although the Law does not define the terms "necessitous and compelling," this Court has held that an employee who claims to have left his employment for a necessitous and compelling reason must prove that:

> (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve [his] employment.

*Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). "An employer's unilateral

---

[6] Claimant continues his argument by asserting that the Board should have determined that he was not ineligible for unemployment compensation benefits pursuant to Section 402(e) because there is no evidence that he engaged in willful misconduct. Because we have determined that the Board did not err in determining that Claimant voluntarily terminated his employment, this argument need not be addressed.

7

imposition of a real and substantial change in the terms and conditions of employment provides a necessitous and compelling reason to leave work." *Philadelphia Housing Authority v. Unemployment Compensation Board of Review*, 29 A.3d 99, 101 (Pa. Cmwlth. 2011). In addition, a claimant's reasonable belief that his professional integrity would be jeopardized by the circumstances of his employment may be necessitous and compelling cause to voluntarily quit. *Fitzgerald v. Unemployment Compensation Board of Review*, 714 A.2d 1126, 1130 (Pa. Cmwlth. 1998).

Claimant relies on *Fitzgerald* in arguing that Employer's proposed modification was an impermissible unilateral change, that he proved the reasonableness of his actions, and that he made a reasonable effort to maintain his employment. We disagree.

In *Fitzgerald*, the claimant worked as a full-time unit manager for two floors of a nursing home where she supervised eight staff members. *Id*. at 1129-30. She also enjoyed weekends and holidays off. *Id*. The supervisor informed her that her position as a unit manager was being eliminated and offered her a position as a house supervisor. *Id.* In that role, the claimant would be responsible for the supervision of all five floors and 20 staff members and the claimant would be required to work on alternating weekends and holidays. *Id.* The claimant quit, contending that she was not qualified to provide the necessary quality of care, she was concerned about resident safety, and she could lose her nursing license if she accepted a position she was not competent to handle. *Id.* at 1127-28. The employer's witnesses corroborated the claimant's testimony that she conveyed her concerns to the employer before ultimately resigning. *Id.* at 1130. In overruling the Board's decision to deny benefits, this Court concluded that it was reasonable for

8

the claimant to believe her professional integrity was jeopardized by the circumstances of her employment and that she expressed her concerns to the employer before quitting. *Id.*

However, this matter is clearly distinguishable from *Fitzgerald*. The claimant in *Fitzgerald* provided extensive testimony about the additional duties that she would have had in the alternative position and how the additional duties would jeopardize her nursing license. She also expressed concern regarding her ability to handle the different levels of care and activity that took place on each floor and maintain the necessary quality of care. The claimant's new position would have dramatically changed her work schedule and days off. She explicitly told her concerns to her employer.

Here, Claimant would have maintained the same work schedule, pay, and benefits. Claimant did not express concerns that the new responsibilities would create any safety issues for patients until his appeal to the Board. In fact, Claimant testified that he told Employer that his desire was to remain in orthopedics because maintaining his orthopedic clinical skills "would be in *my* best interest." N.T. at 4 (emphasis added). At no point in his testimony did Claimant express concern that taking on additional duties would endanger patients or that he would be at risk of violating any statute, regulation, or code of ethics. Neither Claimant nor Employer presented evidence that Claimant conveyed concerns about patient safety or legal violations to Employer during the August 25th or December 1st meetings. Moreover, following the elimination of his position, Claimant contacted Employer and agreed to perform the additional duties if Employer would reinstate him; however there is no evidence that he expressed any concern regarding patient safety or legal violations at that time. Upon careful review of the record, we conclude that there is

9

substantial evidence to support the Board's findings and that the Board did not err in concluding that Claimant is ineligible for unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law.

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene Albert Snyder, Jr., : :
: 
Petitioner : 
: 
v. : No. 737 C.D. 2017
: 
Unemployment Compensation : 
Board of Review, : 
: 
Respondent : 

O R D E R

AND NOW, this 8<u>th</u> day of <u>February</u>, 2018, the order of the Unemployment Compensation Board of Review, dated May 12, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge